*In re* MARRIAGE OF MITCHELL GOLDSTEIN, Petitioner-Appellee, and GAYLE GOLDSTEIN, Respondent-Appellant.

First District (4th Division)   No. 80-958

Opinion filed June 25, 1981.—Rehearing denied July 14, 1981.

1024

David I. Grund and Robert M. Knabe, both of Chicago (Idrienne L. Heymann, of counsel), for appellant.

Ambrose & Cushing, P. C., of Chicago (John C. Ambrose, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Appellant Gayle Goldstein is the respondent in a petition for dissolution of marriage (Ill. Rev. Stat. 1977, ch. 40, par. 401 *et seq.*). After a protracted trial, a judgment for dissolution was entered March 21, 1980. Respondent was awarded maintenance of $200 per month for 12 months, $395.88 as petitioner's share of an outstanding debt, and $750 for attorney's fees. Respondent appeals, attacking the subject matter jurisdiction of the circuit court and claiming error in the court's determination of marital property. Respondent was not allowed to give evidence of the parties' premarital cohabitation and her financial support of the petitioner while he was a student. Respondent asks that this court characterize the petitioner's increased earning potential derived from his medical degree as marital property.

We affirm.

Mitchell and Gayle Goldstein were married on May 1, 1977. At that time Mitchell was a student at the Chicago College of Osteopathic Medicine. Gayle was employed as a teacher in Northbrook, Illinois.

Mitchell was not employed. In 1978, Mitchell graduated. He applied for an internship at the Osteopathic Hospital in Miami, Florida. He was accepted, and in July 1978 Mitchell and Gayle moved to Florida. On August 31, 1978, Mitchell moved out of their leased apartment in Florida. Gayle, having resigned her teaching post in Northbrook, Illinois, had to seek employment in Florida. Mitchell leased another apartment and began his one-year internship.

During that period, on October 18, 1978, Mitchell filed, in the circuit court of Cook County, a petition for dissolution of the marriage. On December 1, 1978, Gayle responded to the petition and filed a counter-petition for legal separation. On February 9, 1979, Gayle filed a petition for temporary maintenance on the grounds that she was unemployed. She was awarded temporary maintenance of $300 per month. In May 1979, Gayle returned to Illinois. In June 1979, Mitchell returned to Illinois to begin a residency at Chicago Osteopathic Hospital.

The trial on the petition for dissolution began on November 8, 1979. Respondent challenged the jurisdiction of the court. Respondent said that the petitioner was not domiciled in Illinois. It was the intent of the petitioner and respondent to purchase a home and reside in Florida. Respondent claimed they had moved "lock, stock and barrel" to Florida in 1978. Petitioner denied this and introduced evidence of a driver's license and automobile insurance as manifesting his intent to retain an Illinois domicile. After the hearing in November, the court ruled that it had proper jurisdiction.

At the hearings on January 2 and February 27, 1980, respondent attempted to introduce evidence of premarital cohabitation. Respondent claimed that she had supported petitioner while he was in medical school. The extent of support was contradicted by the petitioner. He claimed that his parents had paid his tuition, bought his medical books, and paid his living expenses from the time he began medical school in 1974. He estimated that his parents had spent $40,000. Moreover, petitioner claimed to have maintained an apartment near his medical school.

On February 27, 1980, after the parties had filed affidavits of their assets, debts, present income and living expenses, the court held a hearing on marital property. It was determined that the Goldsteins had no real property. Personalty consisting of a car, furniture and household effects were all in the possession of the respondent. The bank account was depleted.

The court ruled that the respondent had not met the burden of proof required to overcome the statutory presumption against maintenance. But, the court awarded respondent limited maintenance of $200 per month for a one-year period. The court further required the petitioner to pay one-half of a Visa credit card debt which respondent stated had been

used for living expenses when they settled in Florida. And, the court awarded respondent $750 toward her attorney's fees. Judgment was entered on March 21, 1980. Respondent appealed.

Respondent contends the trial court lacked subject matter jurisdiction because the parties were not domiciled in Illinois. Domicile is defined as the place where a person has his true, permanent home to which he intends to return whenever he is absent. (*Schultz v. Chicago City Bank & Trust Co.* (1943), 384 Ill. 148, 156, 51 N.E.2d 140, 144.) The question of domicile is largely one of intention, and to establish a new domicile a person must physically move to a new home and live there with the intention of making it his permanent home. *Keck v. Keck* (1974), 56 Ill. 2d 508, 514, 309 N.E.2d 217, 220.

In the petition for dissolution, petitioner alleged that he was presently residing in Cook County, Illinois, and had resided in the State of Illinois for more than 20 years prior to the date of the petition. Further, the parties were married in Illinois. In her counterpetition, respondent alleged that she was presently residing in Cook County, Illinois, had resided in the State of Illinois for more than 20 years prior to the date of the filing of the counterpetition, that the marriage had taken place in Lake County, Illinois, and that at commencement of this action the parties were domiciled in Illinois.

The evidence shows that the parties went to Florida because the petitioner had been accepted for an internship at the Osteopathic Hospital in Miami, Florida. Though respondent claims that they moved "lock, stock and barrel" to Florida, this is not unexpected inasmuch as the only assets of the parties consisted of their household furnishings.

Of paramount importance in determining whether a given place is or is not one's residence is the intent of that person to live there as his permanent home. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 159, 354 N.E.2d 661, 667.) Whether or not a party has abandoned one residence in favor of another in a different jurisdiction is a question of fact.

■■ The court found that the parties had been life-long residents of Illinois. Petitioner returned to Illinois after completing his internship. Respondent returned to Illinois, leased an apartment and obtained employment. Moreover, both parties had alleged in their petitions that they were Illinois residents. It cannot be argued that the trial court's finding is against the manifest weight of the evidence. *Green*, at 160.

■■ Respondent seeks an award of property including the increased potential derived from petitioner's medical degree and an award of maintenance. In Illinois, the term "property" has been defined as a word of the very broadest import, connoting any tangible or intangible *res* which might be made the subject of ownership. (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 662, 397 N.E.2d 511, 518.) Section 503 of the

Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) requires that marital property be divided in just proportion between the spouses. (*Hunt*, at 666.) Just proportion, however, does not mean that marital property be divided 50-50. (See *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065, 1067.) Factors which the trial court should consider when dividing marital property are the value of the property set apart to each spouse, the economic circumstances of each spouse when the division of property is to become effective, and the reasonable opportunity of each spouse to receive income in the future. *Hunt*, at 667.

Respondent seeks to categorize as marital property the increased potential derived from petitioner's medical degree. No Illinois court has ruled on the question of whether future earning capacity flowing from an education can be considered a marital asset and divided by the court in a dissolution of marriage proceeding.

The court in *In re Marriage of Graham* (1978), 194 Colo. 429, 432, 574 P.2d 75, 77, held that an educational degree is simply not encompassed by the broad views of the concept of "property." The degree does not have an exchange value or any objective transferable value on an open market. It terminates on the death of the holder and is not inheritable. The *Graham* court characterized the degree as an intellectual achievement that may potentially assist in the future acquisition of property, but it has none of the attributes of property in the usual sense of the term. 194 Colo. 429, 432, 574 P.2d 75, 77.

Respondent relies on cases from other jurisdictions, *In re Marriage of Horstmann* (Iowa 1978), 263 N.W.2d 885, and *Daniels v. Daniels* (1961), 20 Ohio App. 2d 458, 185 N.E.2d 773, where future earning capacity flowing from a degree was a determination in the distribution of assets and property. These cases are factually distinguishable from our case. Both involved marriages that had endured for 7 or more years; both involved a wife without formal education who had worked and supported the family; and the parties in both cases had children. Neither case treated an educational degree as property capable of being divided.

Respondent states that Illinois has recognized greater future earning potential as an asset to be taken into account when dividing marital property and cites *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859. But, *Smith* is distinguishable in that the reasonable potential earning capacity was taken into consideration because the maintenance-paying spouse had voluntarily retired during the dissolution proceedings in an attempt to avoid maintenance. Moreover, the parties had been married for 34 years and maintained an affluent standard of living.

■■ The Illinois Supreme Court in *In re Marriage of Evans* (1981), (Docket No. 53764) ___ Ill. 2d ___, ___ N.E.2d ___, recently reviewed the

question of whether potential future benefits arising out of employment should be treated as marital property. A threshold question was whether a contractual right to future income is "property" as that term is employed in section 503 of the Act. Section 503(c) calls for marital property to be divided whereas the personal right of an employee to receive future payments from his employer is not susceptible to being divided in the same sense that real estate or personal property may be. The court reviewed the decisions of the appellate courts where specified future income was held to be marital property: military retirement pay accrued during the marriage (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289); disability benefits presently being paid spouse (*In re Marriage of Smith* (1980), 84 Ill. App. 3d 446, 405 N.E.2d 884); vested interests in pension plan (*In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511); pension benefits (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868).

These rights to future income were not contingent on future events such as continuation of employment. The *Evans* court affirmed the trial court's division of property because there was no evidence of the value of the future benefits. Thus, the court could not award an interest as a just apportionment of marital property. As a result, we cannot, as respondent suggests, engage in speculation as to the future income of each party. We do not find that the trial court committed an abuse of discretion.

Respondent contends the trial court erred in excluding evidence of premarital cohabitation. We do not agree. We are bound by *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 61, 394 N.E.2d 1204, 1210, where the court refused to give judicial recognition of mutual property rights between unmarried cohabitants because recognition would violate the policy of the Marriage and Dissolution of Marriage Act.

Respondent relies on *Jiminez v. Jiminez* (1979), 68 Ill. App. 3d 651, 386 N.E.2d 647, as authority for consideration of premarital cohabitation. But, this case is distinguishable. The parties had agreed to pool funds to purchase real estate. Each party contributed funds, and two parcels were purchased. These transactions occurred before the parties were married. What respondent overlooks is that this contractual arrangement would be enforceable as a joint venture or partnership.

■■ We do not find that the trial court erred in excluding evidence of premarital cohabitation. Cohabitation by the parties may not prevent them from forming valid contracts about independent matters, for which it is said the sexual relations do not form part of the consideration. (*Hewitt*, at 59.) But, respondent introduced no evidence of valid contracts about independent matters.

Respondent objects to the award of maintenance and contends that

petitioner's capacity for increased earnings should have been considered in determining an appropriate maintenance award.

Section 504 of the Marriage and Dissolution of Marriage Act provides that the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance (1) lacks sufficient property to provide for his reasonable needs and (2) is unable to support himself through appropriate employment or (3) is otherwise without sufficient income. Section 504(b) provides that the maintenance order shall be in such amounts and for such periods of time as the court deems just. The Act includes factors which are relevant to the court's determination. (See *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 843-44, 398 N.E.2d 868, 870; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 667, 397 N.E.2d 511, 521-22; *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 101, 393 N.E.2d 1065, 1067.) One factor is the length of the marriage. In this case, the marriage endured for 15 months.

■■ The trial court awarded respondent temporary maintenance of $200 per month for a 12-month period. Respondent had been unable to obtain a teaching position after her return to Illinois. She was presently employed as an optician's assistant. But, the salary was less than what she had earned as a teacher. After considering the factors in section 504, the trial court may award maintenance in such amounts and for such periods of time as the court deems just. (*In re Marriage of Gammons* (1979), 78 Ill. App. 3d 1001, 1002, 398 N.E.2d 330, 331.) The award will not be set aside unless it is contrary to the manifest weight of the evidence. (*Sahs v. Sahs* (1977), 48 Ill. App. 3d 610, 611, 363 N.E.2d 156, 157.) We find that there was adequate evidence in the record to support the rulings of the trial court.

For the foregoing reasons, we affirm the judgment.

Judgment affirmed.

JIGANTI and LINN, JJ., concur.