ROBERT LYNN, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. BONNIE LYNN, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued September 13, 1982—Decided December 15, 1982.

*Barry I. Croland* argued the cause for appellant and cross-respondent (*Stern, Steiger, Croland & Bornstein,* attorneys; *Barry I. Croland, Myra T. Peterson* and *Irene U. Mecky,* on the briefs).

*Stephen H. Roth* argued the cause for respondent and cross-appellant.

The opinion of the Court was delivered by

PASHMAN, J.

This is a companion case to *Mahoney v. Mahoney,* 91 *N.J.* 488, and *Hill v. Hill,* 91 *N.J.* 506, both decided today. The facts of this case are more complicated than those of *Mahoney* and *Hill,* and the need for legal redress for the less fortunate party in this case is more acute. However, the legal principles that must be used in resolving all three cases are the same. We reverse in part the judgment of the trial court and remand for further proceedings.

I

Plaintiff, Robert Lynn, and defendant, Bonnie Lynn, were pre-medical students at Rutgers University when they met in 1967. The plaintiff began his medical education at Rutgers Medical School in September 1970 and the parties were married the following June.

During the first three years of their marriage, the defendant worked fulltime at American Cyanamid, rising from the posi-

tion of literature biologist to that of senior market research analyst. Her annual income rose from about $11,000 to $15,000, which she used to support the household. The plaintiff made substantially lower contributions to the household during this time and for two years earned no income. The defendant provided for household expenses with the expectation that her husband's schooling would result in material benefits for both spouses. He was a full-time medical student spending two years at Rutgers and two years at Columbia University College of Physicians and Surgeons. The plaintiff was graduated from medical school in May 1974.

Beginning some time before the marriage, doctors noticed that the defendant was suffering from bilateral hearing loss. In 1974 attacks of vertigo and nausea began to accompany this steady hearing loss, and by 1976 the defendant had to wear hearing aids in both ears. The parties also had some marital problems during this time, apparently caused in large part by the plaintiff's long hours away from home. Nonetheless, the couple lived together on a rather comfortable scale, frequently dining out and vacationing together throughout the time of their marriage until the plaintiff left the marital home in June 1976.

The plaintiff filed a first complaint for divorce in January 1978. The defendant filed an answer and counterclaim for divorce requesting alimony and equitable distribution of property. Each party alleged that the other was guilty of extreme cruelty.

In February 1979, the plaintiff filed a second action for divorce in Connecticut. This complaint sought a divorce on the grounds of irretrievable breakdown of the marriage and adultery. The complaint also sought equitable distribution of property under Connecticut law.

In March 1979, the Chancery Division temporarily enjoined the plaintiff from proceeding with the Connecticut action. In April 1979, the Superior Court of Connecticut stayed the Con-

necticut action until the further order of that court. In May 1979, the Chancery Division entered an interlocutory injunction barring further prosecution of the Connecticut action and enjoining the plaintiff from instituting any other divorce action pending disposition of this case.

Trial was originally scheduled for June 1979, but was postponed several times until October 1980 because of the defendant's illness. The defendant's medical condition deteriorated substantially in 1979 as nausea, slurred speech, sudden falls and other symptoms increasingly accompanied her hearing loss. In October 1979, the defendant was diagnosed as having Meniere's Disease. She left work in September 1979 and was unable to return as of the time of trial.

In December 1979 the Chancery Division ordered bifurcation of the trial. The order allowed the plaintiff to amend his complaint to allege 18 months continuous separation, reserving the defendant's counterclaim for divorce and all other issues until further order of the court. A final judgment of divorce was granted, reserving the remaining issues.

Trial on the remaining issues was held in October 1980. In December 1980 the trial court held that professional degrees and licenses are "property" under the equitable distribution law. *N.J.S.A.* 2A:34–23. The trial court accepted the testimony of defendant's expert witness that the present value of plaintiff's medical degree and license was $306,886. It found that the plaintiff's current annual income was $27,425, while the defendant's income was $7,663.20, the sum of her monthly $638.60 social security disability payments. Other than the plaintiff's medical degree and license, there were several modest marital assets that had been divided by agreement. The court ordered the plaintiff to pay the defendant 20% of the value of his degree and license, amounting to $61,377.20 in graduated installments between July 1981 and July 1986.

The final judgment of divorce also ordered the plaintiff to pay (1) $125 per week in alimony, retroactive to October 2, 1980; (2)

the cost of full medical coverage for the defendant and all her medical expenses above $500 each year; and (3) $2,905.90 in counsel fees.

In its formal opinion holding that educational degrees and licenses are "property" under *N.J.S.A.* 2A:34–23, the trial court thoroughly discussed and rejected the case law in other jurisdictions reaching a contrary result. Dismissing the idea that licenses and degrees might be property only in certain cases, the trial judge relied on the expansive definition of "property" under prior New Jersey decisions. Noting that licenses and degrees could be valued and that New Jersey is a "dynamic, developing, daring state," the court concluded that a medical degree is "property."

In June 1981, the trial court issued an order supplementing the final judgment: (1) ordering the plaintiff to pay defendant's attorney $28,525 in fees and vacating the earlier fee award; (2) entering judgment against the plaintiff for $3,219.09 arrears of alimony; and (3) granting the plaintiff a stay as to payment of the equitable distribution and counsel fee awards, provided that the plaintiff post two supersedeas bonds in the amount of $46,525. Plaintiff has not posted the bond and, therefore, no stay is in effect.

In July 1981, the plaintiff filed a notice of appeal of the order supplementing the final judgment, which was consolidated with the earlier appeal and cross-appeal.

In the same month, the plaintiff, now a Connecticut resident, instituted bankruptcy proceedings in the United States Bankruptcy Court for the District of Connecticut, seeking to discharge among other debts the $61,377.20 equitable distribution award and the $28,525 counsel fee award. Those proceedings are pending.[1]

---

[1]Under federal law, obligations for alimony, maintenance and child support are not dischargeable in bankruptcy. 11 *U.S.C.* § 523(a)(5) (1981). Nor can the debtor discharge attorney fees awarded in a divorce proceeding. *Jones v.*

The defendant filed a motion in the Appellate Division to dismiss the plaintiff's appeals or, in the alternative, to compel the payment of alimony arrears and the posting of security on the judgment. In August 1981, the plaintiff filed a cross-motion seeking a stay of his equitable distribution, counsel fee and certain alimony obligations. In September the Appellate Division denied the plaintiff's motion for a stay and the defendant's motion to dismiss, but granted the defendant leave to move in the trial court to enforce the judgment and for other relief pending appeal.

In September 1981, the defendant moved in this Court for leave to appeal the denial of her motion to dismiss or, in the alternative, for direct certification. The plaintiff filed a cross-motion for leave to appeal the denial of his motion for stay or, in the alternative, for direct certification on the issue of equitable distribution. The Court initially denied the motions, but granted direct certification in April 1982. 91 *N.J.* 182 (1982).

## II

This Court can hardly envision a marriage leaving the two parties in more divergent financial situations. At the time of their marriage, Robert and Bonnie Lynn were young college graduates who looked forward to advanced degrees and promising careers. By the time of trial nine years later, however, the plaintiff was a physician in private practice while his former wife had no graduate degree and was living on social security disability pay. We have made clear that "marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." *Rothman v. Rothman,* 65 *N.J.* 219, 229 (1974); *see also Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum,* 84 *N.J.* 137, 141 (1980). Defendant is thus entitled to relief in this case.

*Tyson,* 518 *F.*2d 678 (9th Cir.1975); *Pelusio v. Pelusio,* 130 *N.J.Super.* 538 (App.Div.1974).

■ The trial court recognized this need and fashioned an extensive award to accomplish it. It erred, however, in concluding that the degree and license are property subject to equitable distribution. As discussed at length in *Mahoney,* the proper means of compensation is not equitable distribution of the plaintiff's medical degree and license. The Court recognizes that the parties accumulated no other assets whose equitable distribution could be skewed to favor the defendant. However, even under these circumstances equity will better be served by an award of alimony that takes into account the parties' vastly different circumstances.

The value of plaintiff's medical degree for the purpose of equitable distribution in this case reveals the problems with that approach. In calculating the value of the degree, defendant's expert used median income charts that did not reflect plaintiff's individual characteristics. He acknowledged that his calculations did not take into account how much plaintiff might have earned without his professional degree. Moreover, using another method of calculation, the expert arrived at a value of the degree more than 50% greater than the value selected by the trial court. Finally, the court gave no explanation for awarding the defendant 20% of the value of the degree. The equitable distribution award of $61,377.20 was therefore little more than an arbitrary figure.

We see no reason to engage in speculation about the plaintiff's enhanced earning capacity and then make a lump-sum property award. Providing for the defendant's present and future needs through a generous but fair award of alimony is more consistent with our alimony and equitable distribution statute, *N.J.S.A.* 2A:34–23, and more likely to result in fairness to both parties. *See Mahoney, supra.*

■ We stated in *Lepis v. Lepis,* 83 *N.J.* 139, 155 (1980), that "[t]he extent of actual economic dependency, not one's status as a wife [or husband], must determine the duration of support as well as its amount." Courts must consider the

duration of the marriage in awarding alimony, *N.J.S.A.* 2A:34–23. However, the length of the marriage and the proper amount or duration of alimony do not correlate in any mathematical formula. Where the circumstances of the parties diverge greatly at the end of a relatively short marriage, the more fortunate spouse may fairly be called upon to accept responsibility for the other's misfortune—the fate of their shared enterprise. Under the facts of this case, both an initial lump-sum award of reimbursement alimony as described in *Mahoney, supra,* and a separate continuing alimony obligation would be appropriate.[2]

█ We assume that in calculating its alimony award the trial court considered that it was also awarding the defendant over $60,000 in equitable distribution of marital property. Because we are vacating that portion of the award, the trial court must redetermine a proper amount of alimony in light of the defendant's needs in the absence of equitable distribution. The trial court's award of alimony retroactive to the first day of trial was reasonable in this case.

We need not determine whether admission of the defendant's expert testimony on the value of plaintiff's medical degree was plain error. Expert testimony on the value of plaintiff's degree and license will not be necessary on remand, since we do not consider the degree and license to be "property" under the statute and there will be no equitable distribution. The defendant may desire to introduce testimony on the issue of the plaintiff's ability to pay alimony, but we find no particular need for such complex and imprecise testimony in a determination on alimony. We have carefully considered all of the parties' other claims with the exception of plaintiff's allegation that the amount of counsel fees awarded is excessive and we find them to be without merit.

---

[2]As discussed in *Mahoney, supra,* reimbursement alimony does not involve any consideration of the economic *value* of the professional degree or license.

Counsel fees in this case were calculated in part on the premise that Mrs. Lynn was to receive an award in equitable distribution of her husband's medical degree. In view of our disposition of this case, the matter of fees will be remanded to the trial court for reconsideration based on the resolution of other issues before that court.

The trial court's judgment granting equitable distribution is reversed and the cause remanded to the Chancery Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For affirmance*—None.