438 So.2d 146 (1983)
Patrick W. HUGHES, Appellant,
v.
Kathleen K. HUGHES, Appellee.
No. 82-2315.
District Court of Appeal of Florida, Third District.
September 20, 1983.
*147 Gary S. Gostel, Miami, for appellant.
Edmond W. Frank, Miami, for appellee.
Before NESBITT, BASKIN and FERGUSON, JJ.
NESBITT, Judge.
By this appeal, the husband challenges several portions of the order dissolving the parties' marriage.
The facts relevant to our discussion are as follows. The parties were married for twelve years but lived apart for the last five. At the time of the final hearing, the husband was earning $50,000 a year as an employee for Florida Power and Light Company, while the wife was earning $27,500 a year as a registered nurse. During the marriage, the husband had completed his bachelor of science degree at the University of Miami and obtained a second bachelor of science degree from Florida International University. Florida Power and Light Company had reimbursed most of his tuition payments. The marital home, which was purchased with joint funds, has an equity of $80,000. Since the time of the separation, the husband has remained in the residence making all of the mortgage payments while the wife has moved into an apartment.
The husband's first argument is that he was entitled to credit for mortgage payments made from the time of separation until the date of the final hearing. We agree and reverse on this issue. Parker v. Parker, 405 So.2d 1021 (Fla. 3d DCA 1981), dismissed 412 So.2d 468 (Fla. 1982); Dancu v. Alexander, 421 So.2d 819 (Fla. 4th DCA 1982); Guthrie v. Guthrie, 315 So.2d 498 (Fla. 4th DCA 1975).
The husband's second contention is that the trial court improperly granted the wife lump sum alimony based on the future value of the husband's college degrees earned during the marriage. The only appellate court in Florida to have considered this question found that the "wife's claim to a vested interest in the husband's education and professional productivity past and future is unsupported by any statutory or case law." Severs v. Severs, 426 So.2d 992, 994 (Fla. 5th DCA 1983). While we agree with the fifth district's result, in light of the arguments presented by the parties, a discussion of the relevant law is warranted. We commence our analysis with an overview of the approaches utilized in other jurisdictions to resolve the issue.
In a leading case, In re Marriage of Graham, 194 Colo. 429, 574 P.2d 75 (1978), the Colorado Supreme Court considered whether the ascription of property status to an education degree would be appropriate. Reasoning that it would not, the court stated:
An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.
574 P.2d at 77. See also Wisner v. Wisner, 129 Ariz. 333, 631 P.2d 115, 122 (Ct.App. 1981) (the marital property concept "simply *148 does not fit"). In re Marriage of Goldstein, 97 Ill. App.3d 1023, 53 Ill.Dec. 397, 423 N.E.2d 1201 (1981); Muckleroy v. Muckleroy, 84 N.M. 14, 498 P.2d 1357 (1972) (for purposes of community property law, a medical license is not community property since it cannot be the subject of joint ownership) Hubbard v. Hubbard, 603 P.2d 747 (Okl. 1979).
This theoretical argument is not nearly as strong as the pragmatic concern represented in decisions such as Mahoney v. Mahoney, 91 N.J. 488, 453 A.2d 527 (1982). In that case, the court observed that the value of a professional degree is nothing more than the possibility of enhanced earnings that the academic credential will provide. Consistent with this view, the marital property which is being divided is in actuality the future earnings obtained by the degree. Such an analysis raises the problem of engaging in speculation as to the value of an intangible asset. This procedure would involve a "gamut of calculations that reduces to little more than guesswork." Mahoney, 453 A.2d at 532. The same view was adopted in DeWitt v. DeWitt, 98 Wis.2d 44, 296 N.W.2d 761, 768 (Ct.App. 1980):
Whether a professional education is and will be of future value to its recipient is a matter resting on factors which are at best difficult to anticipate or measure. A person qualified by education for a given profession may choose not to practice it, may fail at it, or may practice in a speciality, location or manner which generates less than the average income enjoyed by fellow professionals. The potential worth of the education may never be realized for these or many other reasons. An award based upon the prediction of the degree holder's success at the chosen field may bear no relationship to the reality he or she faces after the divorce.
See also Todd v. Todd, 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (1969); Wilcox v. Wilcox, 173 Ind. App. 661, 365 N.E.2d 792 (1977) (a vested present interest must exist for the item to come within the ambit of marital assets); Moss v. Moss, 639 S.W.2d 370 (Ky. Ct. App. 1982); cf. Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1 (1983) (good will in contrast to a degree reflects not just a possibility of future earnings but a probability based on existing circumstances). Even if such an estimation could be made, the court would then be required to calculate the differential between what the degree holder would have obtained without the education and what has been accomplished by the enhanced career. Mahoney, supra. This figure must be further tempered by such considerations as the fact that as a profession develops, income becomes attributable to experience rather than to the degree.
The concern with valuing this intangible is substantially increased with the realization that property distributions become final and are not subject to alteration upon a change of circumstances. If the degree holder fails to live up to the court's expectations, the finality of property distribution precludes a remedy. Mahoney, supra; DeWitt, supra. Because of these problems with valuing a degree, the majority of courts have decided not to subject professional degrees to distribution as a property right.
Several courts which have declined to treat the degree as property have awarded the supporting spouse reimbursement for financial contributions made to obtain the degree, see, e.g., Moss, supra; Moss v. Moss, 80 Mich. App. 693, 264 N.W.2d 97 (1978); DeLa Rosa v. DeLa Rosa, 309 N.W.2d 755 (Minn. 1981); Mahoney, supra; Hubbard, supra; Lundberg v. Lundberg, 107 Wis.2d 1, 318 N.W.2d 918 (1982) (broadening the amount of compensation allowed from that permissible under the statute in effect at time DeWitt, supra, was decided); or have found that the spouse's education will be taken into account in arriving at the property division of other marital assets and in determining alimony and child support, see, e.g., Wisner, supra; In re Marriage of Graham, supra; Scott v. Scott, 645 S.W.2d 193 (Mo. App. 1982); DeWitt, supra.
On the other side, at least three courts have adopted a recognitional approach. In only one, O'Brien v. O'Brien, 114 Misc.2d 233, 452 N.Y.S.2d 801 (1982), did a court *149 award a spouse the value of the degree holder's education as measured by future earnings. The other two decisions, while identifying a property interest, limited its value to its cost. In Inman v. Inman, 578 S.W.2d 266 (Ky. Ct. App. 1979), the court stated:
In most cases, we feel that the best measure of a spouse's interest in such a degree should be measured by his or her monetary investment in the degree, but not equivalent to recovery in quasi-contract to prevent unjust enrichment.
Thus the amount spent for direct support and school expenses during the period of education, plus reasonable interest and adjustments for inflation, should be apportioned to the spouse who provided support when, as in the case of the Inmans', there is little or no marital property acquired through the increased earning capacity provided by the supported spouse's degree or training.
578 S.W.2d at 269-70; but see, Leveck v. Leveck, 614 S.W.2d 710 (Ky. Ct. App. 1981) (limiting Inman's holding that license and degree are marital property). The Supreme Court of Iowa drew a distinction between the educational degree itself and the potential for increase in future earning capacity and held that the latter constituted an asset subject to distribution. In re Marriage of Horstmann, 263 N.W.2d 885 (Iowa 1978). However, like Inman, the court accepted, as a method of valuing the degree, the costs incurred in its procurement.
In sum, while a variety of approaches have been utilized to find that a degree is property or to deny such a characterization, the majority view appears to be that an educational degree is not an asset subject to distribution because its value, as measured by future earning capacity, is too speculative to calculate. Against this background, we must decide the course which we will follow.
In the present case, the following discussion was had relevant to this issue:
THE COURT: I assume I have a lot of discretion on it. It is tough to try to figure out what a wife's contribution from that sensitive period would be.
What does that mean in terms of his future earnings, even down the line, the increases that he would have made, for example.
I assume he would be making around $20,000 a year working for FP & L. Now he is making 50. So, every year he has increased she has contributed to his increasing $30,000  not that whole $30,000, but I do think that even the most minimal figure, like a half of a percent of that  saying that is all she contributed, you are still talking another $10,000 for that figure.
A half a percent a year for his increase and he has got another twenty years to live or work, at least; 30 years, probably  twenty years to work.
Even figuring a half of a percent of that increase  I am going to say that the wife will be entitled, then, to a lump sum alimony of $50,000.
It is apparent from the trial judge's recitation that he viewed the value of the degree to be the future earning capacity to the degree holder and accordingly granted lump sum alimony on that basis. We agree with the trial judge and the other jurisdictions which have found that if the value of an educational degree is to be measured, it must be calculated by the possibility of future earnings and not solely by its cost.
As the Appellate Division explained, the cost of a professional degree "has little to do with any real value of the degree and fails to consider at all the nonfinancial efforts made by the degree holder in completing his course of study." 182 N.J. Super. at 610, 442 A.2d 1062. See also DeWitt, supra, 296 N.W.2d at 767. Once a degree candidate has earned his or her degree, the amount that a spouse  or anyone else  paid towards its attainment has no bearing whatever on its value. The cost of a spouse's financial contributions has no logical connection to the value of that degree.
Mahoney, 453 A.2d at 533. See also DeWitt, supra. However, the fact that the degree *150 must be measured by such an imprecise and uncertain yardstick raises the same concerns in this court as it has in many other jurisdictions. The trial judge's best guess as to the potential of the degree holder is just that  a guess. And yet, because of this determination, the spouse may be locked into a career which he or she may not choose to follow. Basing an inflexible award on the changing circumstances of everyday life creates a burden which we are not willing to place on a spouse merely because he decided to obtain a degree.
Additionally, to calculate lump sum alimony upon a possibility whichmight occur in the future is inconsistent with Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) which defined the parameters for a lump sum award as follows:
A judge may award lump sum alimony to ensure an equitable distribution of property acquired during the marriage, provided the evidence reflects (1) a justification for such lump sum payment and (2) financial ability of the other spouse to make such payment without substantially endangering his or her economic status.
382 So.2d at 1201.
First, it is clear that future earnings cannot be property acquired during the marriage. This problem has been recognized in community property states, In re the Marriage of Aufmuth, 89 Cal. App.3d 446, 152 Cal. Rptr. 668 (1979), (overruled in part on other grounds by In re Marriage of Lucas, 27 Cal.3d 808, 614 P.2d 285, 166 Cal. Rptr. 853 (1980)); Frausto v. Frausto, 611 S.W.2d 656 (Tex.Civ.App. 1980), as well as other jurisdictions whose statutes or case law provide that the marital property includes only assets in existence at the time of dissolution. See DeWitt, supra; In re Marriage of McManama, 399 N.E.2d 371 (1980).
Second, the requirement that the spouse have the financial ability to make the lump sum payment will not be satisfied where the award is based on earnings to be accumulated in the future. In effect, the spouse is being forced to make a payment from something which has never existed. See generally Ramsey v. Ramsey, 431 So.2d 258 (Fla. 2d DCA 1983).
After careful consideration of the foregoing arguments, we conclude in accordance with the majority view, that an educational degree is not property subject to distribution as lump sum alimony because its value, which must be measured by future earning capacity, is too speculative to calculate. Accordingly, we reverse that portion of the trial court order which awarded the wife $50,000 in lump sum alimony based on the husband's prospective earnings.
Because dissolution orders necessarily encompass interrelated problems in apportioning assets to create an overall balance, we need not, at this stage, consider the other matters raised by the husband. On remand, the trial court may again exercise its discretion to modify related matters so as to do equity and justice. Hartzell v. Hartzell, 434 So.2d 353 (Fla. 4th DCA 1983). In doing so, the trial court should consider the husband's education in arriving at the distribution of other assets and in determining the propriety and/or amount of alimony. See Section 61.08(2)(f).[1]
Reversed and remanded.
NOTES
[1] Section 61.08

... .
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
... .
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education and career building of the other party.