493 A.2d 1074

**Jeanne P. ARCHER**

v.

**Thomas P. ARCHER.**

**No. 153, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 12, 1985.

Allen J. Kruger, Laurel (Kristen I. Schoeck and Goldman, Nichols, Kovelant, Hurtt & Kruger, Laurel, on the brief), for appellant.

Paul S. Warshowsky, Columbia (Levan, Schimel, Richman & Belman, P.A., Columbia, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

The question presented is whether a medical degree and license to practice medicine obtained by a spouse during marriage constitutes "marital property" within the contemplation of the Property Disposition in Divorce and Annulment Law (the Act), Maryland Code (1984), § 8–201(e) of the Family Law Article; that section provides:

"(1) 'Marital property' means the property, however titled, acquired by 1 or both parties during the marriage.

(2) 'Marital property' does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift of a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources."

I

Jeanne (Appellant) and Thomas (Appellee) Archer were married on August 6, 1977. At that time, Thomas had just completed his first year of medical school. Jeanne, having completed two years towards an undergraduate degree, discontinued her studies to work full time. She continued to work after the birth of the Archers' two children in 1981 and 1982. During the marriage, Thomas attended medical school for three years, obtained his medical degree and license and completed two years of his residency. The United States Navy paid Thomas' medical school expenses, together with a tax-free stipend of approximately $500 per month, in exchange for Thomas' four-year commitment to serve the Navy upon graduation. In addition to the stipend, Thomas' earnings during the marriage consisted of approximately $1,500 each summer from work done while in medi-

cal school and $15,000 to $18,000 per annum while completing two years of his residency requirement.

The Archers were temporarily separated for most of 1979 and were permanently separated in October of 1982. They were divorced by decree of the Circuit Court for Prince George's County on July 12, 1984; the decree awarded Jeanne custody of the two children, child support of $250 per child per month and alimony of $100 per month for a period not to exceed one year. The decree also required Thomas to maintain medical and life insurance for the benefit of the two children.

The question of whether Thomas' medical degree and license constituted marital property for purposes of making a monetary award to Jeanne under § 8–205(a) of the Family Law Article was separately considered. That section provides that after the court determines "which property is marital property, and the value of the marital property, [it] may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded." In determining the amount and method of payment of a monetary award, the court is enjoined by § 8–205(a) to consider each of ten specified factors, including "the contributions, monetary and nonmonetary, of each party to the well-being of the family"; "the economic circumstances of each party at the time the award is to be made"; "how and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property"; and "any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." Section 8–205(b) permits the court to reduce to judgment "any monetary award made under this section, to the extent that any part of the award is due and owing."

The trial court (Rea, J.) held that a medical degree or license was not marital property under the Act and thus denied Jeanne's prayer for a monetary award. In so hold-

ing, the court adopted the reasoning of the Colorado Supreme Court in its determination of a similar issue in *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75, 77 (1978):

"An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term."

Jeanne appealed, contending that a medical degree/license is marital property under the Act and, as such, subject to equitable distribution upon divorce by a monetary award. We granted certiorari, 302 Md. 409, 488 A.2d 500 (1985) prior to consideration of the appeal by the intermediate appellate court to consider this issue of first impression in Maryland.

## II

The provisions of the Act, together with its underlying history, have been extensively considered in a number of our recent cases. *See, e.g., Schweizer v. Schweizer*, 301 Md. 626, 484 A.2d 267 (1984), and cases cited at 629, 484 A.2d 267. It is sufficient here to note that the Act indicates that nonmonetary contributions within a marriage should be recognized in the event that a marriage is dissolved; that a spouse whose activities do not include the production of income may nevertheless have contributed toward the acquisition of property by either or both spouses during the marriage; that when a marriage is dissolved, the property interests of the spouses should be adjusted fairly and

equitably, with careful consideration given to both monetary and nonmonetary contributions made by the respective spouses; and that the accomplishment of these objectives necessitates that there be a departure from the inequity inherent in Maryland's old "title" system of dealing with the marital property of divorcing spouses.

### III

Jeanne maintains that the definition of "marital property" —"all property, however titled, acquired ... during the marriage"—must be liberally construed to effect its broad remedial purposes and that the term therefore encompasses nontraditional forms of "property" such as a medical degree or license. She recognizes, however, that of the twenty-four jurisdictions which have considered the matter, courts in all but two jurisdictions have uniformly held that a professional degree or license is not marital property subject to equitable division.[1] Virtually all of these courts,

---

1. *Jones v. Jones,* 454 So.2d 1006 (Ala.Civ.App.1984); *Pyeatte v. Pyeatte,* 135 Ariz. 346, 661 P.2d 196 (1982); *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (1981); *Sullivan v. Sullivan,* 134 Cal.App.3d 634, 184 Cal.Rptr. 796 (1982), *superseded on other grounds,* 37 Cal.3d 762, 209 Cal.Rptr. 354, 691 P.2d 1020 (1984); *Aufmuth v. Aufmuth,* 89 Cal. App.3d 446, 152 Cal.Rptr. 668 (1979), *overruled on other grounds, In re Marriage of Lucas,* 27 Cal.3d 808, 166 Cal.Rptr. 853, 614 P.2d 285 (1980); *Todd v. Todd,* 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969); *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978); *Wright v. Wright,* 469 A.2d 803 (Del.Fam.Ct.1983); *Hughes v. Hughes,* 438 So.2d 146 (Fla.App.1983); *Severs v. Severs,* 426 So.2d 992 (Fla.App.1983); *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 83 Ill.Dec. 425, 470 N.E.2d 551 (1984); *In re Marriage of Goldstein,* 97 Ill.App.3d 1023, 53 Ill.Dec. 397, 423 N.E.2d 1201 (1981); *In re Marriage of McManama,* 179 Ind.App. 513, 386 N.E.2d 953 (1979), *vacated on other grounds,* 272 Ind. 483, 399 N.E.2d 371 (1980); *In re Marriage of Horstmann,* 263 N.W.2d 885 (Iowa 1978); *Inman v. Inman,* 648 S.W.2d 847 (Ky.1982); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn.1981); *Ruben v. Ruben,* 123 N.H. 358, 461 A.2d 733 (1983); *Lynn v. Lynn,* 91 N.J. 510, 453 A.2d 539 (1982); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Muckleroy v. Muckleroy,* 84 N.M. 14, 498 P.2d 1357 (1972); *Kutanovski v. Kutanovski,* App.Div., 486 N.Y.S.2d 338 (1985); *O'Brien v. O'Brien,* 106 App.Div.2d 223, 485 N.Y.S.2d 548 (1985); *Conner v. Conner,* 97 App.Div.2d 88, 468 N.Y.S.2d 482 (1983); *Lesman v. Lesman,* 88 App.Div.2d 153, 452 N.Y.S.2d 935 (1982); *Conteh v. Conteh,*

consistent with the rationale advanced by the Colorado Supreme Court in *In re Marriage of Graham, supra,* have held that an advanced degree or professional license lacks the traditional attributes of "property," being neither transferable, assignable, devisable, nor subject to conveyance, sale, pledge or inheritance. Some courts, by way of an additional reason for concluding that a degree/license is not marital property, have held that such items are too speculative to value.[2] Other courts have said that efforts to characterize spousal contributions as an investment or commercial enterprise deserving of recompense demean the concept of marriage.[3] Still other courts have found that the future earning capacity of a degree or license-holding spouse is personal, a mere expectancy and a post-marital effort—not divisible as "marital property."[4] And some

---

117 Misc.2d 42, 457 N.Y.S.2d 363 (1982); *Pacht v. Jadd,* 13 Ohio App.3d 363, 469 N.E.2d 918 (1983); *Lira v. Lira,* 68 Ohio App.2d 164, 428 N.E.2d 445 (1980), *later proceeding,* 12 Ohio App.3d 69, 465 N.E.2d 1353 (1983); *Hubbard v. Hubbard,* 603 P.2d 747 (Okla.1979); *Lehmicke v. Lehmicke,* 339 Pa.Super. 559, 489 A.2d 782 (1985); *Hodge v. Hodge,* 337 Pa.Super. 151, 486 A.2d 951 (1984); *Wehrkamp v. Wehrkamp,* 357 N.W.2d 264 (S.D.1984); *Saint-Pierre v. Saint-Pierre,* 357 N.W.2d 250 (S.D.1984); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ. App.1980); *DeWitt v. DeWitt,* 98 Wis.2d 44, 296 N.W.2d 761 (1980), *superseded by statute, In re Marriage of Lundberg,* 107 Wis.2d 1, 318 N.W.2d 918 (1982); *Grosskopf v. Grosskopf,* 677 P.2d 814 (Wyo.1984).

2. *Todd v. Todd,* 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969); *In re Marriage of Goldstein,* 97 Ill.App.3d 1023, 53 Ill.Dec. 397, 423 N.E.2d 1201 (1981); *Lynn v. Lynn,* 91 N.J. 510, 453 A.2d 539 (1982); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Pacht v. Jadd,* 13 Ohio App.3d 363, 469 N.E.2d 918 (1983); *Saint-Pierre v. Saint-Pierre,* 357 N.W.2d 250 (S.D.1984).

3. *Sullivan v. Sullivan,* 134 Cal.App.3d 634, 184 Cal.Rptr. 796 (1982); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *Lesman v. Lesman,* 88 A.D.2d 153, 452 N.Y.S.2d 935 (1982).

4. *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 83 Ill.Dec. 425, 470 N.E.2d 551 (1984); *Wilcox v. Wilcox,* 173 Ind.App. 661, 365 N.E.2d 792 (1977); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982); *O'Brien v. O'Brien,* 106 App.Div.2d 223, 485 N.Y.S.2d 548 (1985); *Conner v. Conner,* 97 A.D.2d 88, 468 N.Y.S.2d 482 (1983); *Saint-Pierre v. Saint-Pierre,* 357 N.W.2d 250 (S.D.1984); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ.App.1980).

other courts, in declining to find that a graduate degree or professional license is marital property, express the view that such items are best considered when awarding alimony.[5]

Notwithstanding the overwhelming number of jurisdictions which hold that a degree or license is not marital property, Jeanne urges adoption of a minority view advanced by an intermediate appellate court in Michigan and a trial court in Massachusetts, both holding that a professional degree or license is marital property. *Woodworth v. Woodworth,* 126 Mich.App. 258, 337 N.W.2d 332 (1983); *Reen v. Reen,* 8 Fam.L.Rep. (BNA) 2193 (Mass.Prob. and Fam.Ct. Dec. 23, 1981).[6] In *Reen,* the court held, without elaboration, that a husband's license to practice orthodontia constituted marital property. *Woodworth* held that a husband's law degree, earned during marriage, was marital property. In rejecting the majority view, the court held that the fact that an educational degree or license does not conform with traditional property concepts—not being transferable, assignable nor subject to sale, conveyance or pledge—was outweighed by the need to achieve the "most equitable solution" when one spouse sacrifices and works for the benefit of the other who pursues a professional degree and enhances his earning capacity. 337 N.W.2d at 335. That marriage is not a commercial enterprise or investment from which dashed expectations or efforts

---

5. *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (1981); *Kutanovski v. Kutanovski,* App.Div., 486 N.Y.S.2d 338 (1985); *O'Brien v. O'Brien,* 106 App.Div.2d 223, 485 N.Y.S.2d 548 (1985); *Conteh v. Conteh,* 117 Misc.2d 42, 457 N.Y.S.2d 363 (1982); *Pacht v. Jadd,* 13 Ohio App.3d 363, 469 N.E.2d 918 (1983); *Lira v. Lira,* 68 Ohio App.2d 164, 428 N.E.2d 445 (1980), *later proceeding,* 12 Ohio App.3d 69, 465 N.E.2d 1353 (1983); *Daniels v. Daniels,* 20 Ohio Ops.2d 458, 185 N.E.2d 773 (1961); *Hodge v. Hodge,* 337 Pa.Super. 151, 486 A.2d 951 (1984).

6. Jeanne also relies on two New York trial court cases to support the contention that a professional degree or license is marital property. We note, however, that on appeal the judgments were reversed in both cases. *See Kutanovski v. Kutanovski,* App.Div., 486 N.Y.S.2d 338 (1985); *O'Brien v. O'Brien,* 114 Misc.2d 233, 452 N.Y.S.2d 801 (1982).

ought to be recompensed was, in the Michigan court's opinion, merely a characterization of "marriage while it endures"; it failed, the court said, to focus upon dissolution of the marriage and how best to compensate, not for a failed expectation, but for one spouse's share of the fruits of a degree which she helped the other earn. *Id.* at 336. The view that valuation of a degree is too speculative to constitute marital property was also rejected, it being concluded that courts have been adept at calculating future earnings in a number of contexts, such as personal injury, wrongful death and workers' compensation cases. *Id.* Lastly, the view that the non-degree spouse's contributions are best considered when awarding alimony was also rejected; the court reasoned that the purpose of alimony was for spousal support, involving a variety of factors in the determination of whether alimony should be awarded, including financial condition and the ability to be self-supporting. In the case of a spouse who has worked and supported the other spouse through graduate school, the court said that the former will usually be capable of self-support. Moreover, as Michigan courts have discretion to terminate an alimony award upon remarriage of the spouse who is awarded alimony, the court concluded that the award of alimony was not an adequate means for recognizing the contributions of a spouse who has helped the other through graduate school.

The effect of *Woodworth* in Michigan is by no means clear. More recently, the issue of whether a professional degree is a marital property asset has generated a split of opinion among Michigan's intermediate appellate courts. *Olah v. Olah*, 135 Mich.App. 404, 354 N.W.2d 359 (1984), rejecting *Woodworth*, held that an educational degree is unique to its possessor and lacks any of the typical attributes of property, even when interpreted in its broadest sense. In *Watling v. Watling*, 127 Mich.App. 624, 339 N.W.2d 505 (1983), the court concluded that the wife had been sufficiently compensated for her contributions towards her husband's dental degree while in his last year of school,

having received the benefits of a nineteen-year marriage and having received contributions from the husband for all but the last year of her education towards an advanced degree.

Our cases have generally construed the word "property" broadly, defining it as a term of wide and comprehensive signification embracing " 'everything' which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition.' " *Deering v. Deering*, 292 Md. 115, 125, 437 A.2d 883 (1981); *Diffendall v. Diffendall*, 239 Md. 32, 36, 209 A.2d 914 (1965). In *Bouse v. Hutzler*, 180 Md. 682, 686, 26 A.2d 767 (1942), we said that the word "property," when used without express or implied qualifications, "may reasonably be construed to involve obligations, rights and other intangibles as well as physical things." "Goodwill," for example, has been characterized as a legally protected valuable property right. *Schill v. Remington Putnam Co.*, 179 Md. 83, 88–89, 17 A.2d 175 (1941)

In *Deering*, we recognized a spouse's pension rights to be a form of marital property subject to equitable distribution. 292 Md. at 128, 437 A.2d 883. In that case, involving consolidated appeals, appellant wives appealed from decrees which denied them any monetary award based on their husbands' pensions which were unmatured, fully vested pension rights based on obligatory contributions deducted from their pay. *Id.* at 118, 120, 437 A.2d 883. Citing *Weir v. Weir*, 173 N.J.Super. 130, 413 A.2d 638 (1980) and *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (en banc), we concluded that a spouse's pension rights, "to the extent accumulated during the marriage," constitute a form of "marital property" subject to distribution. 292 Md. at 128, 437 A.2d 883. In so holding, we noted that regardless of the type of retirement plan, vested or unvested, noncontributory or contributory, the critical issue was "whether a property right has been acquired during the marriage and whether equity warrants its inclusion in the marital estate in light of its limitations."

*Id.* at 127, 437 A.2d 883 (citing *Weir, supra,* 413 A.2d at 640). We said that as

> " 'pension benefits represent a form of deferred compensation for services rendered, the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property, ... an employee acquires a [judicially recognized] property right to pension benefits when he enters upon the performance of his employment contract.' " *Id.* at 127, 437 A.2d 883 (citing *Brown, supra,* 126 Cal.Rptr. at 637, 544 P.2d at 565).

■ While, as earlier indicated, we have in some contexts construed the term "property" in a broad sense, there is nothing in the Maryland Act to suggest that the General Assembly intended that a medical degree or license, earned during marriage, would constitute "marital property" subject to equitable distribution upon divorce by a monetary award. We therefore hold, in accordance with the majority view, that a professional degree or license does not possess any of the basic characteristics of property within the ambit of marital property under § 8–201(e) of the Act. While pension rights, as in *Deering,* constitute a current asset which the individual has a contractual right to receive, such rights are plainly distinguishable from a mere expectancy of future enhanced income resulting from a professional degree. The latter is but an intellectual attainment; it is not a present property interest. It is personal to the holder; it cannot be sold, transferred, pledged or inherited. It does not have an assignable value nor does it represent a guarantee of receipt of a set monetary amount in the future, such as pension benefits. Quite simply, a degree/license does not have an exchange value on an open market. *In re Marriage of Graham, supra,* 574 P.2d at 77. At best, it represents a potential for increase in a person's earning capacity made possible by the degree and license in combination with innumerable other factors and conditions too uncertain and speculative to constitute "marital property"

within the contemplation of the legislature.  *See also Auf-muth v. Aufmuth,* 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (1979), *overruled on other grounds, In re Marriage of Lucas,* 27 Cal.3d 808, 166 Cal.Rptr. 853, 614 P.2d 285 (1980); *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 83 Ill.Dec. 425, 470 N.Ed.2d 551 (1984); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982).  Moreover, as *Dewitt v. Dewitt,* 98 Wis.2d 44, 296 N.W.2d 761 (1980), makes clear, income earned after the marriage is dissolved as a result of the degree/license would in no event constitute "marital proper-ty" within the definition of that term in § 8–201(e), since it would not have been acquired during the marriage.

■ The cases thus lead inexorably to the conclusion that the trial judge in this case correctly found that Thomas' medical degree and license were not encompassed within the legislatively intended definition of marital property in the Maryland statute.  *See* n. 1, *supra,* at 352–353.[7]

---

7.  Questions relating to the equitable division of a professional degree or license have been the subject of numerous law review articles.  *See* Fitzpatrick and Doucette, "Can the Economic Value of an Education Really be Measured?  A Guide for Marital Property Dissolution," 21 J.Fam.L.  511 (1982–83); Krauskopf, "Recompense for Financing Spouse's Education:  Legal Protection for the Marital Investor in Human Capital," 28 Kan.L.Rev.  379 (1980); Loeb and McCann, "Dilemma v. Paradox:  Valuation of An Advanced Degree Upon Dissolution of a Marriage," 66 Marq.L.Rev.  495 (1983); Moore, "Should a Professional Degree be Considered A Marital Asset Upon Divorce?", 15 Akron L.Rev.  543 (1982); Raggio, "Professional Goodwill and Professional Licenses as Property Subject to Distribution Upon Dissolution of Marriage," 16, Number 2, Fam.L.Q.  147 (1982); "Equitable Distribution of Degrees and Licenses:  Two Theories Toward Compensating Spousal Contributions," 49 Brooklyn L.Rev.  301 (1983); Comments, "Division of Marital Property on Divorce:  What Does the Court Deem 'Just and Right?'", 19 Hous.L.Rev.  503 (1982); Notes, "Domestic Relations:  Consideration of Enhanced Earning Capacity of Recently Educated Spouse in Divorce Settlements," 17 Suffolk U.L.Rev.  901 (1983); Comment, "For Richer or Poorer—Equities in the Career—Threshold, No-Asset Divorce," 58 Tul.L.Rev.  791 (1984); "The Supporting Spouse's Rights in the Other's Professional Degree Upon Divorce," 35 U.Fla.L.Rev.  130 (1983); "A Property Theory of Future Earning Potential in Dissolution Proceedings," 56 Wash.L.Rev.  277 (1981); "Family Law:  Ought a Professional Degree Be Divisible As Property Upon Divorce?", 22 Wm. & Mary L.Rev.  517 (1981).  *See also* 24

## IV

■ Jeanne does not challenge the amount of her alimony award and we do not, therefore, consider its adequacy in the circumstances of this case. We note that under § 11–106 of the Family Law Article, the chancellor was empowered to take into account such matters as the husband's earning capacity in making an alimony award. Specifically, § 11–106 enjoins the chancellor to consider a number of enumerated factors "necessary for a fair and equitable award" including, among others, "the contributions, monetary and nonmonetary, of each party to the well-being of the family"; "the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony"; and "the financial needs and financial resources of each party."

■ We share Thomas' view that if public policy dictates that some economic compensation be made to a spouse who makes monetary and nonmonetary contributions to the other spouse's acquisition of a professional degree/license, equitable results can be achieved under § 11–106. Indeed, this section permits the chancellor to consider the circumstances surrounding the acquisition by one spouse of a professional degree/license, as well as that spouse's potential income. Any income actually earned as a result of one spouse's acquisition of a professional degree/license, together with the sacrifices of the other spouse toward its attainment, are factors which may, and presumably were in this case, considered by the court in making its alimony award to Jeanne.

DECREE AFFIRMED, WITH COSTS.

---

Am.Jur.2d *Divorce and Separation* § 898 (1983); Annot., 4 A.L.R. 4th 1294 (spouse's professional degree or license as marital property for purposes of alimony, support, or property settlement).