ALAN J. LESMAN, Respondent-Appellant, v HEDY LESMAN, Appellant-Respondent.

Fourth Department, July 9, 1982

APPEARANCES OF COUNSEL

*Markel & Marshall* (*Sheldon M. Markel* of counsel), for respondent-appellant.

*Cunningham & Pares* (*William J. Cunningham* of counsel), for appellant-respondent.

OPINION OF THE COURT

BOOMER, J.

The principal issue on these cross appeals from a judgment of divorce is whether a license to practice medicine or a medical degree, earned during the marriage, is

marital property within the meaning of the equitable distribution law (Domestic Relations Law, § 236, part B). The trial court granted judgment to the wife on the grounds of cruel and inhuman treatment, but denied her application for an award in lieu of equitable distribution of the husband's medical license, holding that the license was not .an item subject to equitable distribution. We agree with the trial court and we affirm the judgment in that respect.

The parties were married in Brooklyn, New York, on August 8, 1971, and two days later they went to Guadalajara, Mexico, where the husband attended medical school. During their three and one-half year stay in Mexico, the wife did not work because, she said, Mexican law did not allow her to do so. The full cost of tuition, books, and other school expenses for the husband's medical education was approximately $25,000 to $30,000. This was paid for by the husband from his savings, a New York State higher education loan and other personal loans. In 1972 or 1973, the wife went to New York for a period of five months where she worked and earned $25 per week. There is no indication that she contributed any of this amount to her husband.

After the husband completed medical school in January, 1975, the parties returned to New York where the husband worked for one year as a nonsalaried medical clerk. During this time and until her first child was born in May of 1976, the wife worked as a computer operator earning a gross wage of $115 per week. She has not worked since. After he served his clerkship, the husband was employed at Elmhurst City Hospital where he completed one year of internship and two years of residency. He supported his family from his earnings as an intern and resident. After the husband completed his residency in June of 1979, the parties went to Buffalo so the husband could accept a fellowship in gastroenterology. The parties separated in December, 1979.

At the time of the trial in July, 1981, the husband had signed a contract to start work as a staff physician at a hospital in New York City at a salary of $45,000 a year with the possibility of earning some extra income from

private practice. His highest gross income for any year during the marriage was $21,000. At the time of the trial the wife was attending a training program operated by CETA which would qualify her as a medical receptionist. During her training she was receiving $192 every two weeks. The program was scheduled to end in January, 1982, but after that she intended to take more courses leading to employment as a medical assistant. These courses will last until June or September, 1982, and will not be paid for by CETA.

Two children were born of this marriage, one in May, 1976, and one in January, 1979.

In addition to granting a divorce to the wife, the trial court granted her custody of the children and awarded her $200 a week for maintenance and $100 a week for child support. The wife appeals from the trial court's denial of her application for an award in lieu of equitable distribution of her husband's license to practice medicine which she claims is marital property.

The question whether an advanced education or a professional license earned during the marriage is property subject to distribution upon divorce is one of first impression in the appellate courts of this State.[1] Appellate courts in other States, however, have passed upon the issue.[2] The majority view is that these items are not property and that a wife who contributes to her husband's professional education may not, upon divorce, receive an award for her contributions (*Matter of Wisner v Wisner,* 129 Ariz 333; *Todd v Todd,* 272 Cal App 2d 786; *Matter of Aufmuth,* 89 Cal App 3d 446; *Matter of Graham v Graham,* 194 Col 429; *Matter of Goldstein,* 97 Ill App 3d 1023; *Wilcox v Wilcox,* 173 Ind App 661; *Matter of McManama,* __ Ind __, 399 NE2d 371; *Leveck v Leveck,* 614 SW2d 710 [Ky]; *Stern v Stern,* 66 NJ 340; *Mahoney v Mahoney,* 182 NJ Super 598; *Muckleroy v Muckleroy,* 84 NM 14; *Nastrom v Nastrom,* 262 NW2d 487 [ND]; *Frausto v Frausto,* 611 SW2d 656 [Tex]; *DeWitt v DeWitt,* 98 Wis 2d 44).

---

1. Recently the Supreme Court of Westchester County held that a medical education is property subject to equitable distribution (*O'Brien v O'Brien,* 114 Misc 2d 233).

2. See Ann., 4 ALR4th 1294.

Four cases treat the license or its potential for increase in earning capacity as property (*Matter of Horstmann,* 263 NW2d 885 [Iowa]; *Matter of Sullivan,* __ Cal App 3d __ [decided Jan. 8, 1982]; *Inman v Inman,* 578 SW2d 266 [Ky]; *Daniels v Daniels,* 20 Ohio Opns 2d 458). The Iowa and California cases seem to give the contributing spouse a share in the value of the education (*Matter of Horstmann, supra,* p 891; *Matter of Sullivan, supra*), while the Kentucky case limits the recovery to "his or her monetary investment in the degree". (*Inman v Inman, supra,* p 269.) The Ohio case holds that the license can be considered in awarding alimony (*Daniels v Daniels, supra,* p 459).

The Kentucky Court of Appeals applies the property concept only under limited circumstances. It holds that a professional education or degree is property only when it is necessary to treat it as such to do equity to the contributing spouse, that is, where the marriage dissolves shortly after the degree is attained, there is no property to distribute and the contributing spouse does not qualify for alimony (*Inman v Inman, supra*).[3] Where, however, the parties live together for several years after the graduation and the contributing spouse qualifies for maintenance, then the license or degree is not treated as property (*Leveck v Leveck,* 614 SW2d 710, *supra*).

Other appellate courts, while deciding that an advanced degree or professional license is not property, nevertheless hold that the spouse contributing to the education of the other is entitled, on equitable principles, to restitution of the amounts expended (*DeLa Rosa v DeLa Rosa,* __ Minn __, 309 NW2d 755; *Hubbard v Hubbard,* 603 P2d 747 [Okla]). One court, under the guise of granting alimony, awarded the wife a lump-sum of $15,000 which "fairly represent[ed] the wife's contribution to the acquisition of [the husband's medical degree] acquired during coveture." Normally, this award of alimony would have been im-

**3.** In *Inman* (*supra,* p 268), the court had "strong reservations about placing a professional license in the category of marital property. Doing so can only create another field for battle in the already complex and delicate area of division of marital property. In spite of these reservations, however, we feel that there are certain instances in which treating a professional license as marital property is the only way in which a court can achieve an equitable result."

proper since the wife was self-supporting and was earning more than the husband (*Moss v Moss,* 80 Mich App 693, 695).

Most of the arguments against categorizing professional education as property are recited in the recent New Jersey case of *Mahoney v Mahoney* (182 NJ Super 598, *supra*), and in the cases it cites. We find those arguments persuasive.

A professional education, degree or license does not fall within the traditional concepts of property. "It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term." (*Matter of Graham v Graham,* 194 Col 429, 432, *supra*.)

By classifying an education or degree as property, the courts, in reality, treat as property the future enhanced earning capacity that may result from the education. Enhanced earning capacity is not property. It is not vested; it is only an uncertain expectancy, for it is dependent upon the future success and efforts of the degree holder.

Gross inequities may result from predicating distribution awards upon the speculative expectation of enhanced future earnings, since distributive awards, unlike maintenance, once fixed may not be modified to meet future realities. It is almost impossible to predict what amount of enhanced earnings, if any, will result from a professional education. The degree of financial success attained by those holding a professional degree varies greatly. Some, even, may earn less from their professional practices than they could have earned from nonprofessional work. Moreover, others, due to choice or factors beyond their control, may never practice their professions.

The property concept does not fit the situation where the parties have lived together for some period of time after

graduation. In the typical case the wife works and contributes her income to enable the husband to continue his schooling and earn his professional degree. In making this contribution the wife expects that she will benefit from the increased income her husband will earn from the practice of his profession. Since this expectation is aborted when the parties are divorced shortly after the husband graduates, some courts apply the property concept to restore to the wife the amount she has invested. However, where the parties live together for a number of years after the husband enters his profession, the wife's expectation is realized, in part at least, and by participating in her husband's income, she receives a return which may exceed the amount of her contributions to his education. It is also probable that at the time of the divorce, as the result of the husband's enhanced earnings, the parties will have accumulated marital property in which the divorced wife will share and thereby receive a return on her investment. Under these circumstances, the Kentucky court would hold that the degree or license is not property. If we were to characterize education as property under some circumstances and not under others, we would create the "doctrinal chaos" referred to by the New Jersey court in *Mahoney v Mahoney* (182 NJ Super 598, 608, *supra*): "[T]he concept of property cannot, as a matter of rationality or common sense, be defined by a purely circumstantial criterion. If a license or degree or its enhanced earning potential is not property five or ten or twenty years after graduation, it cannot be property on graduation day either * * * The simple fact remains that the marital property label does not suit at all and, therefore, cannot be made to suit some of the time."

We are not persuaded by the minority view that the courts should broaden the concept of property to embrace professional education, degrees or licenses. This does not end our inquiry, however, for we must consider whether we may provide a remedy for the wife in this case under some equitable theory.

Here, the wife contributed no money to the husband's education, although she did provide the usual spousal services while he attended school and she did contribute

her earnings to the parties' support for a period of one and one-half years after the husband graduated from medical school. She has, however, been awarded substantial maintenance which will be paid out of the husband's enhanced professional earnings and thus her contributions toward her husband's education will not go unrewarded. There is no need here for the court to fashion an equitable remedy.

We would not be inclined to fashion such a remedy in any event. It is the hard case, typified by the sacrificing wife who is deserted by her ungrateful husband shortly after he achieves his educational goal, that led some of the courts to fashion an equitable remedy to restore to the wife the contributions she had made. Even in such cases, the equitable remedies of unjust enrichment and restitution do not fit. Marriage, as the cases supporting the majority rule point out, is more than an economic undertaking. The parties agree upon the manner in which they will provide financial support and nonfinancial services to each other, and they do not place values on their respective contributions, nor do they expect to pay each other for those contributions. Every unsuccessful marriage results in the disappointment of expectations, financial as well as nonfinancial, but it does not result in a financial loss in a commercial sense. The wife, by contributing to her husband's education, follows a plan agreed upon for the joint benefit of both spouses. "If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectations by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance of the relationship and its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage." (*Mahoney v Mahoney,* 182 NJ Super 598, 614, *supra.*)

The Legislature, not the courts, has provided for the terms and consequences of divorce. It may not have been equitable, when granting a divorce, to have permitted property acquired during the marriage to remain with the spouse who held legal title, but the courts did not feel free to provide for equitable distribution of marital property. That was a matter for the Legislature. The Legislature has

now provided for equitable distribution of "property". It has not provided for equitable distribution of future earnings and we should not do so, either by distorting the concept of property or by applying our own notions of equity. In most cases the courts can accomplish equity by awarding maintenance to a wife who requires it,[4] or by granting her an equitable share of whatever marital property has accumulated. In fixing the amount of maintenance, and in distributing the marital property, the courts must consider the contributions made by the wife to the husband's "career or career potential" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; subd 6, par a, cl [8]).

If the wife does not qualify for maintenance, it will be because she has ample resources to support herself. Here, we have been discussing the typical case where the wife contributes to the husband's education. If a wealthy husband were to finance his wife's education, would we feel compelled to grant restitution to him in the event of a divorce? Where it is the wife who makes the contribution, should restitution be ordered even where she has ample means? If a perceived inequity requires a remedy in these cases, the Legislature, not the courts, should provide it.[5]

The husband appeals from the awards for maintenance and child support. Based on the record, the Trial Justice properly exercised his discretion in awarding the wife the weekly sums of $200 for maintenance and $100 for child support and we affirm the awards.

The husband also appeals from the provision of the judgment concerning the duration of maintenance. That

---

**4.** See *Hill v Hill* (182 NJ Super 616) where the court held that the wife who contributed to the husband's medical education was entitled to rehabilitative alimony so she could complete her education. The amount of the alimony was not to depend, however, upon the amount of her contributions or upon whether she made any contributions at all.

**5.** Indiana has enacted legislation permitting the courts to reimburse the spouse who contributed to the other's education. "When the court finds there is little or no marital property, it may award either spouse a money judgment not limited to the existing property. However, this award may be made only for the financial contribution of one spouse toward tuition, books, and laboratory fees for the higher education of the other spouse." (Ind Code, § 31-1-11.5-11, subd [c].)

provision states that "plaintiff shall pay to the defendant the sum of TWO HUNDRED ($200.00) DOLLARS per week as and for maintenance until such time as the parties' youngest child reaches her majority, or until the defendant remarries". This provision is reasonable. The marriage lasted eight years and produced two children. Even though she may become employed, the wife may require some maintenance as long as she is caring for the children. If at any earlier time the circumstances no longer justify the continuance of maintenance, the husband may move to modify the judgment to terminate the maintenance payments.

■ We determine, however, that other provisions of the judgment, relating to future modification of maintenance and support payments, are unauthorized and must be deleted. Either party may seek a modification of the judgment of divorce based upon a "substantial change in circumstance" (Domestic Relations Law, § 236, part B, subd 9, par b). Any question about a modification of the amount of maintenance or child support can best be determined in the future to meet the changed conditions (*Golden v Golden,* 37 AD2d 578). Finally, we see no reason to disturb the award to the wife for counsel fees.

Accordingly, the judgment should be modified by deleting from the fifth adjudging paragraph the sentence in parentheses, and by deleting the sixth, seventh·and eighth adjudging paragraphs, and, as modified, affirmed.

DILLON, P. J., HANCOCK, JR., DENMAN and MOULE, JJ., concur.

Judgment unanimously modified, on the law and facts, and, as modified affirmed, without costs, in accordance with opinion by BOOMER, J.