Michael O'Brien, Appellant-Respondent, v Loretta O'Brien, Respondent-Appellant.

Second Department, February 11, 1985

### APPEARANCES OF COUNSEL

*Willard H. DaSilva* (*Cynthia A. Hackel* and *Andrew Yankwitt* on the brief), for appellant-respondent.

*Albert J. Emanuelli* for respondent-appellant.

*Minna D. Edelman* for Legal Awareness For Women, *amicus curiae.*

*Sally Weinraub, P.C.* (*Shirley Tolley* of counsel), for Westchester Women's Bar Association, *amicus curiae.*

### OPINION OF THE COURT

O'CONNOR, J.

#### MARITAL PROPERTY

The threshold question, simply put, is whether a professional license acquired by one spouse during the marriage but attributable to the combined efforts, in varying degrees, of both spouses, constitutes marital property subject to equitable distribution. More specifically, the crucial issue is whether the plaintiff husband's medical license[1] constitutes marital property within the intent of Domestic Relations Law § 236 (B).

The issue was first presented in the appellate courts of the State in 1982, in the Fourth Department case of *Lesman v Lesman* (88 AD2d 153, *appeal dismissed* 57 NY2d 956), and it was there concluded that an advanced educational degree *or* professional license earned during the marriage is not marital property. Although new to New York, the issue had been considered in many other jurisdictions, the vast majority of which held that neither an educational degree nor a license is marital property (*In re Wisner v Wisner,* 129 Ariz 333, 631 P2d 115; *In re Aufmuth,* 89 Cal App 3d 446, 152 Cal Rptr 668; *Todd v Todd,* 272 Cal App 2d 786, 78 Cal Rptr 131; *In re Graham v Graham,* 194 Col 429, 574 P2d 75; *In re Goldstein,* 97 Ill App 3d 1023, 423 NE2d 1201; *In re McManama v McManama,* 272 Ind 483, 399 NE2d 371; *Wilcox v Wilcox,* 173 Ind App 661, 365 NE2d 792; *Leveck v Leveck,* 614 SW2d 710 [Ky]; *In re DeLa Rosa v DeLa Rosa,* 309 NW2d 755 [Minn]; *Mahoney v Mahoney,* 91 NJ 488, 453 A2d 527; *Stern v Stern,* 66 NJ 340, 331 A2d 257; *Muckleroy v Muckleroy,* 84 NM 14, 498 P2d 1357; *Nastrom v Nastrom,* 262 NW2d 487 [ND]; *Lira v Lira,* 68 Ohio App 2d 164, 428 NE2d 445;

---

1. In October 1980, the plaintiff husband received a license to practice medicine. In January 1982, at trial, he was a first-year resident in surgery, but would not be eligible to practice as a surgeon until 1985. Yet Special Term computed the present-day value of the plaintiff husband's license predicated *upon the average projected income of a practicing surgeon.*

*Hubbard v Hubbard,* 603 P2d 747 [Okla]; *Frausto v Frausto,* 611 SW2d 656 [Tex Civ App]; *DeWitt v DeWitt,* 98 Wis 2d 44, 296 NW2d 761).[2]

The court in *Lesman v Lesman* (*supra,* p 157) flatly stated that "[a] professional education, degree or license does not fall within the traditional concepts of property", and followed with an interesting quote from a Colorado report which, although hardly controlling, is relevant: "It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advance degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term" (*In re Graham v Graham,* 194 Col 429, 432, 574 P2d 75, 77, *supra*).

It would defy all law, logic and reason to declare, as we did in *Conner v Conner* (97 AD2d 88), that a college *degree* is not marital property, and to now hold, as suggested by the minority, that a professional *license* is marital property. In my opinion neither a license nor a degree is property, either at common law or by statute.

Moreover, it seems to me that if it be sustained that a professional license is marital property — then we must declare, as a matter of law, that the future enhanced earning capacity of the holder thereof likewise is marital property! But clearly, enhanced earning capacity is not marital property. It is not vested; it has but, at best, a speculative and uncertain expectancy, dependent almost entirely upon the continued existence, good health, perseverance, diligence, and intellectual capacity, not to mention intellectual integrity, of the holder of the license.

In short, a license, even under its most liberal construction (for example, the 1936 Restatement of Property's adoption of the concept of all property as a combination of "legal relations between persons with respect to a thing" [Restatement of Property, Introductory Note, at 3]), is hardly property. It may well be that the holder of a license has the *potential,* under favorable circumstances, to amass property in futuro,[3] but that is a far cry

---

**2.** It is noted that the weight of such decisions is de minimis because the equitable distribution statutes differ widely in different jurisdictions.

**3.** Domestic Relations Law § 236 (B) (1) (c) specifically defines marital property as property acquired *during* the marriage.

from designating the license itself (or the highly speculative and uncertain future earning capacity of its holder) as property.

Obviously, what is taking place here is that the wife seeks a reification of the husband's surgical license, so as to buttress her claim to a goodly percentage of his enhanced earnings potential which is determined, at least in part, by his work expectancy of some 30 years.

For two simple reasons this court cannot accede to the wife's request for a distribution of the husband's future earnings as though such earnings were marital property:

First, there is nothing in the Equitable Distribution Law or its legislative history that suggests an intention by the Legislature, upon these facts, to vest a proprietary right in one spouse to the other spouse's very person. As we said in *Conner* (*supra*), a license is a nonassignable personal privilege conferred upon an individual by operation of State law (*see,* Education Law §§ 224, 6506, 6512; Judiciary Law §§ 90, 478, 484; *see also,* Kocourek, *The Hohfeld System of Fundamental Legal Concepts,* 15 Ill L Rev 24, 32). The privilege itself is not a resource to which a spouse may make a legally cognizable claim. The privilege is alienable by no one but the granting authority, and it can be conferred on a claimant such as the defendant wife in this case only if she complies with the requirements fixed by that authority, the State of New York.

Nevertheless, the resource actually sought to be controlled by the wife to the exclusion of all others, including the husband, is a percentage of his future labors that utilize that nonassignable privilege. In short, the privilege has no pecuniary value susceptible of ascertainment by the wife's expert apart from such labor. Labor, however, is merely the use by the husband of his own best asset, his chief capital — the property of his own person (*see,* Tribe, American Constitutional Law § 15-14, at 948, citing *Lynch v Household Fin. Corp.,* 405 US 538, 552 [opn by Stewart, J.]; 1 Callman, Unfair Competition, Trademarks and Monopolies § 1.23, n 11 [4th ed]; 3 Pound, Jurisprudence § 83, at 33; § 84, at 69, 86; § 87, at 155-57; *cf.* Savigny, System of Modern Roman Law, at 272-76 [Holloway translation]).

Hence, there is a real distinction between being obliged to pay maintenance or transfer marital property and being owned in part by a former spouse. Such a distinction rarely becomes important except in a case such as this, in which there is strong temptation to substitute for a careful evaluation of the statutory factors relevant to maintenance and equitable distribution of

marital property a mechanical analysis that simplistically demarcates the husband's obligation to share the fruits of his future labors by a fictional partition of the res of his surgeon's license.

Second, despite *Conner* and *Lesman* (*supra*), the minority and Special Term have determined that there is a legal distinction between a college degree and a license.[4] I fail to appreciate the difference. It is difficult for me to agree that a *license* granted after graduation from a trade school, be it for barbers or beauticians, plumbers or physicians, or whatever, constitutes marital property, but that an advanced graduate *degree,* i.e., an M.B.A. from Harvard University, does not.

What kind of property are we all talking about? If it be property at common law it conjures up all kinds of problems, constitutional and otherwise. Not alone a spouse, but every judgment creditor of a debtor would be in a position to attach and execute against such property. Such a proposition is filled with indescribable mischief and cannot seriously be entertained.

If, on the other hand, it be suggested that by operation of statute a license is marital property, the pressing question is immediately presented, where in the statute is such a proposition explicitly, or for that matter, implicitly set forth? To the contrary, a careful reading of Domestic Relations Law § 236 (B) fails to disclose any such legislative intent.

For example, section 236 (B) (1) (c), under "[d]efinitions", says in substance that "[t]he term 'marital property' shall mean all property acquired by either or both spouses during the marriage". But as already noted, a license is a nonassignable personal privilege and surely if there was any intent to include a degree *or* a license as property was this not the precise place to so indicate? If indeed, *future* earnings are henceforth to be regarded as *present* marital property, would not the bill drafters at this point have clearly indicated their thoughts on this novel, *sui generis* concept?

Section 236 (B) (5) (d) (6), in substance, indicates that the court shall consider any equitable claim to marital property by the party not having title. Almost as a second thought the section goes on to say that in awarding maintenance, the court shall consider any efforts, expenditures or contributions and services made by one spouse "to the career or career potential of the other party". But if it was ever intended to give to a spouse

---

**4.** It is interesting that Special Term found that "plaintiff's *education and degree* constituted a property right * * * [which] is subject to equitable distribution" (114 Misc 2d 233, 241; emphasis added).

(here the wife) a percentage of the present value of the other spouse's life income, predicated upon the latter's life expectancy, could it not, and would it not, and should it not have been clearly so stated?

In any event, in the absence of any such guidelines, it seems to me that we are bound to give the words of the statute their plain, clear meaning and the conclusion inexorably follows that *future* earnings are *not* present marital property and neither is a license nor a degree.

### BROKEN DREAMS

The widely heralded reform contained in Domestic Relations Law § 236 (B) came about as a result of widespread dissatisfaction with the then existing common-law title theory of property division, which, in substance, provided that upon dissolution of the marriage, each spouse retained that property that he or she held solely in his or her own individual name. Unlike today, there were then comparatively few women in the marketplace and, generally speaking, the husband was the sole breadwinner and usually title to all property accumulated during the marriage was vested in his name. When such parties separated, gross inequities and great injustices flowed from the title theory and change was in the wind. It came in 1980 when, after long study and research, the Legislature passed the New York equitable distribution statute, which was heralded far and wide as a giant step in the right direction. The law states that upon termination of a marriage the court must equitably divide all property acquired by either or both spouses during the marriage regardless of which one holds the title (Domestic Relations Law § 236 [B] [1] [c]).

A special problem arises where, as here, except for a few dollars in the bank, the parties possess no property of any kind and one spouse therefore seeks an interest in the other spouse's professional license.

The wife has expended time (nine years), rendered services (homemaker, companion), contributed funds (principal fund raiser, living expenses, tuition, books, etc.), and, at first blush, it seems grossly unfair that she should not, now, as they stand on the threshold of achieving their common goal, fully share in the material success they both have worked so hard to achieve.

At this point, the temptation is almost irresistible to conclude that the wife has been woefully abused in that the husband, through the long years of college and medical school, accepted her help, financial and otherwise, and then, shortly after receiving his medical license, walked out on her and sued for divorce.

But, once we succumb to that line of thought — even if it be true — we are immediately confronted with a second temptation, equally compelling, and that is to either distort the concept of property or to apply our own notions of equity in order to right this perceived wrong (*see, Lesman v Lesman,* 88 AD2d 153, *appeal dismissed* 57 NY2d 956, *supra*). I fear that the minority, with the loftiest of intentions, is doing precisely that.

In *Blickstein v Blickstein* (99 AD2d 287), the question was squarely presented as to whether marital fault is a "just and proper" consideration in determining distribution of marital property in view of the over-all purpose of the Equitable Distribution Law. This court unanimously held that marital fault, except in the most egregious case, is not a relevant consideration in the equitable distribution of marital property.

At the time the bill providing for equitable distribution was passed (L 1980, ch 281), the Governor and the legislative leaders were in accord that under its provisions modern marriage was recognized, at least in part, as a partnership — of coequals. This, of course, is true in the sense that each partner, subject to varying equities, is a coequal owner of all marital property (*see,* Governor's memorandum of approval, 1980 McKinney's Session Laws of NY, at 1863; *see,* Assembly memorandum in support of new law in 11C Zett-Kaufman-Kraut, NY Civ Prac, Appendix B, at App B-1; *see also, Conner v Conner,* 97 AD2d 88, 96-97, n 2, *supra*).

Even in these days of no-fault conversion divorce, marriage is more, much more, than just an economic venture.

When a marriage is terminated, for whatever reason, the law seeks not to determine which partner is the more or the less to blame. The law is fully preoccupied as it struggles to equitably distribute the marital property, if there be any. It is not for the court to fix the guilt nor to be endlessly tied up seeking to determine whether one spouse unwisely — and to what extent — dissipated his or her assets. It is enough that the dreams are now broken and that the marriage is no more.

But let us, for the moment, return to *Lesman v Lesman* (*supra*), and reflect upon what that court had to say about property at pages 159 and 160: "The Legislature has now provided for equitable distribution of 'property'. It has not provided for equitable distribution of future earnings and we should not do so, either by distorting the concept of property or by applying our own notions of equity. In most cases the courts can accomplish equity by awarding maintenance to a wife who requires it, or by granting her an equitable share of whatever marital

property has accumulated. In fixing the amount of maintenance, and in distributing the marital property, the courts must consider the contributions made by the wife to the husband's 'career or career potential' (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; subd 6, par a, cl [8])".

This sound advice is preceded at page 157 with the warning: "Gross inequities may result from predicating distribution awards upon the speculative expectation of enhanced future earnings, since distributive awards, unlike maintenance, once fixed may not be modified to meet future realities. It is almost impossible to predict what amount of enhanced earnings, if any, will result from a professional education. The degree of financial success attained by those holding a professional degree varies greatly. Some, even, may earn less from their professional practices than they could have earned from nonprofessional work. Moreover, others, due to choice or factors beyond their control, may never practice their professions".

In this regard, it might appear that the conclusions of the court in *Litman v Litman* (93 AD2d 695, *affd* 61 NY2d 918) are in conflict with our holding in the case before us. However, in *Litman*, the court was dealing with a going law practice and its conclusions were founded upon the specific language of Domestic Relations Law § 236 (B) (5) (e) which provides that "where the distribution of an interest in a business, corporation or profession" would be impractical, burdensome or contrary to law, the court, in lieu of making a distribution of an interest in such, shall make a distributive award in order to achieve equity between the parties.

It thus seems clear that the language of that statute, which is directed at a going business or profession, established *during the marriage,* may not properly be stretched to encompass a professional degree or license where the possessor has not, as yet, embarked upon his career and where, in fact and in law, there is no marital property to distribute.

We cannot, however, emphasize too strongly that despite the new law's emphasis on rehabilitation and the substitution of maintenance and equitable distribution of marital property for alimony, the Legislature did not intend to repudiate the traditional practice of taking into consideration a spouse's prospective income growth for purposes of awarding alimony in cases in which the other spouse had temporarily deferred higher marital living standards in the expectation of such growth (*see, Contrubis v Contrubis,* 46 AD2d 615; *Winkler v Winkler,* 13 AD2d 924, *affd* 11 NY2d 693; *Hunter v Hunter,* 10 AD2d 291, 295; *Millner v Millner,* 60 Misc 2d 122, 124-125).

Further, it is abundantly clear that the law does not propose to permit the student spouse to walk away from the marriage, taking with him, as here, a medical degree, a medical license and a sharply increased earning potential, and leaving the working spouse behind, holding a bag filled with nothing but broken dreams and a judgment of divorce.

Obviously, this court cannot, and should not, remain aloof and oblivious to the apparent and, in fact, real inequities that exist between the parties at this point, and, indeed, it does not. A simple reading of the law and an analysis of its legislative history, reviewed above, makes it abundantly clear that Domestic Relations Law § 236 (B) provides a proper alternative to the problem which is rational and reasonable and does not strain to classify as "property" something which does not fall within any accepted definition of that term.

We bring this discussion to a conclusion as we briefly explore that solution.

### CONCLUSION

There is before us the classical "student-spouse, working-spouse" syndrome wherein the wife has contributed the major portion during the course of the marriage, in the role of homemaker and principal financial supporter of her student husband. It was precisely such a situation that was of particular concern to the drafters of the new law and so, abandoning the partnership analogy at this point which would leave the parties where they happen to lie at the termination of their marriage, the Legislature chose to confer upon the dependent spouse an equitable rather than an arbitrary equal share of marital property (nonexistent here), sufficient maintenance for his or her reasonable needs (for a short or long term), and, if appropriate, rehabilitation so that that spouse might become an independent and contributing member of society (*see, Lesman v Lesman,* 88 AD2d 153, 160, *supra; Leibowits v Leibowits,* 93 AD2d 535, 544 [concurring opn]; Foster and Freed, Virtue Is Not The Only Reward For Spousal Contributions, NYLJ, Jan. 17, 1983, p 1, col 1; *cf.* Posner, Economic Analysis of Law § 5.3, at 108-11).

In keeping with the intent of the law, the facts at bar recommend in a very particular and appropriate way an award for both proper maintenance (*see,* Domestic Relations Law § 236 [B] [1] [a]; [6] [a]) and rehabilitation in preparation for respondent wife's return to the labor market. First of all, we have established that there is virtually no marital property available for equitable distribution. The record further indicates that at the time of trial the wife was 36 years of age and a college graduate

with a provisional teacher's certificate who had been married for nine years but had no children. Her testimony was that it would require some 15 months of postgraduate studies for her to earn a permanent teacher's certificate. It is quite clear that the wife has sacrificed her marketable skills as a teacher, and the inference is logically valid and compelling that she has lost opportunities in her chosen profession,[5] in order to advance the husband's career.

We therefore suggest that Special Term fashion a maintenance award to the wife which will take into consideration the contributions she made to the future increased capacity of the husband. To that end, and taking into full consideration the prospective income growth of the husband with its attendant upgrading of life-style, such award should be sufficient in amount to cover all reasonable living expenses necessary to sustain such advanced life-style and should continue for a reasonable time under all of the surrounding circumstances. Such award shall be paid in a lump sum or in stated amounts at stated intervals (cf. Lynn v Lynn, 91 NJ 510, 453 A2d 539; Lira v Lira, 68 Ohio App 2d 164, 428 NE2d 445, supra; In re Lundberg v Lundberg, 107 Wis 2d 1, 318 NW2d 918).

It is further suggested that Special Term fashion a rehabilitative award in favor of the wife which will cover all reasonable costs of her postgraduate studies leading towards a permanent teacher's certificate. Included in such award should be all proper expenses connected with such studies, including, but not limited to, tuition, books, fees, transportation and incidental expenses. Such award should be paid in a lump sum or in stated amounts at stated intervals and in the event the wife remarries prior to the expiration of the time reasonably required to complete such graduate studies, any balance of payments then remaining unpaid, should be due and payable immediately (cf. Hill v Hill, 91 NJ 506, 453 A2d 537).

An award of expert witness' fees to the wife we find inappropriate in view of the fact that she is gainfully employed and the husband has significant additional debts and support obligations to meet. We find that the award of maintenance arrears was proper and we also approve the award of attorney's fees.

---

**5.** Contrary to our colleagues of the minority, the record suggests that respondent fully intends to continue as a teacher. Indeed, Special Term, over appellant's objection, permitted respondent to testify in some detail as to the cost, in time and expense, for respondent to receive a permanent teacher's license. The court said: "This would be in connection with attempting to rehabilitate so as to have the spouse in the position to be self sufficient" (emphasis supplied).

Accordingly, the judgment appealed from should be modified, on the law, by deleting the fourth, fifth, sixth and seventh decretal paragraphs thereof. As so modified, the judgment should be affirmed insofar as appealed from by the plaintiff, without costs or disbursements, and the matter should be remitted to the Supreme Court, Westchester County, for further proceedings consonant with the views herein expressed. Since defendant's brief concludes with the request that the judgment appealed from should "be affirmed as written", and since she has raised no issues in that brief in support of her cross appeal, the cross appeal should be dismissed as abandoned, without costs or disbursements.

THOMPSON, J. P. (concurring in part and dissenting in part).

I

In this matrimonial action, we address a situation where one spouse (the defendant wife) has contributed, both by direct financial means and by providing homemaker services, to the other spouse's (the plaintiff husband's) attainment of a medical education which has culminated in a medical license during the course of the marriage, and an action for divorce is commenced by the husband at a time when there is a minimum of concrete, liquid assets that qualify as "marital property" (Domestic Relations Law § 236 [B] [1] [c]) to equitably distribute because there has not been time to translate the medical license into any meaningful tangible financial gains. The trial court concluded that plaintiff's medical license, obtained during the marriage, qualified as "marital property", and awarded defendant the sum of $188,800, payable over 10 years, based upon a determination that the present value of the subject license was $472,000 and that defendant was entitled to 40% of said amount (114 Misc 2d 233). In determining the present value of the "marital property" the trial court relied upon the testimony of an expert witness, who used the technique of capitalizing the excess-earning potential differential between a college graduate and a general surgeon over plaintiff's productive work life expectancy. I believe that the court's decision to treat a professional license as marital property was correct because it is consistent with the legislative intent underlying the enactment of Domestic Relations Law § 236 (B) and with the actual language employed by the statute. I further conclude that under the circumstances of this case the approach used in determining the amount of the "distributive award" (Domestic Relations Law § 236 [B] [1] [b]) that was made was an appropriate one, although other approaches (to be discussed, *infra*) may also have been considered proper.

## II

The facts of this case are neither complicated nor unusual. One court has recently characterized the situation as "so familiar as to be almost a cliche" (*Matter of Washburn v Washburn*, 101 Wn 2d 168, 173, 677 P2d 152, 155). The parties to this action were married in April 1971. At that time they were both working as teachers in a parochial school. The plaintiff completed his undergraduate education at night and left his full-time teaching position to complete a year of premedical courses, while the defendant continued to teach. In June 1973, the parties went to Mexico, where they resided for approximately 3½ years while the plaintiff attended medical school at the University of Guadalajara. The plaintiff attended medical school full time, and he contributed the $10,000 he obtained from student loans toward the parties' joint living expenses. The defendant worked at various teaching and tutorial jobs earning a total of approximately $11,650 while the parties lived in Mexico, which earnings were utilized for their family purposes. The plaintiff's medical school tuition was paid for by contributions from his family and the defendant's father.

The parties returned to the United States in January 1977. The defendant resumed her teaching position at the parochial school, where she earned between approximately $8,100 and $9,000 per year until this action was commenced. The defendant testified that she could have more than doubled her teaching salary if she had earned the additional credits needed to obtain a permanent teaching certificate. In addition to her full-time employment, during the period of the marriage, the defendant performed most of the household chores and managed the parties' finances. After the parties returned to this country, the plaintiff devoted most of his time to completing his medical school education and the training necessary to obtain a license to practice medicine. He served a one-year training residency in internal medicine, and at the time of trial he was completing his first year of residency training in general surgery. In October 1980, he was awarded a license to practice medicine, and two months later, in December 1980, plaintiff commenced this action for divorce. The trial court found that defendant had contributed approximately 76% of the couple's total income during the marriage. The marriage was a childless one.

## III

When New York enacted its Equitable Distribution Law in 1980 (L 1980, ch 281), the new statute was considered to be a major reform of the previous law, which had provided for the

distribution of property to the title-holding spouse upon a divorce (Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:4, 1977-1984 Supp Pamph, pp 184-185). The new law recognized that the marriage relationship is one which contains the element of an economic partnership (Governor's memorandum on approving L 1980, ch 281, 1980 McKinney's Session Laws of NY, at 1863), and in furtherance of this recognition, a new concept, "marital property", was incorporated as an integral part of the statute. This unique concept of property, solely a statutory creation as it pertains to New York divorce law, is broadly defined by the statute as *"all* property acquired by either or both spouses during the marriage and before * * * the commencement of a matrimonial action, *regardless of the form in which title is held* * * * Marital property shall not include separate property as hereinafter defined" (Domestic Relations Law § 236 [B] [1] [c]; emphasis supplied). Separate property is then defined in specific and limited terms (Domestic Relations Law § 236 [B] [1] [d]). In creating great flexibility in effectuating an appropriate distribution of marital property, the courts are directed to distribute such property "equitably between the parties, considering the circumstances of the case and of the respective parties" (Domestic Relations Law § 236 [B] [5] [c]). The courts must consider "any equitable claim to * * * or direct or indirect contribution made to the acquisition of such material property by the party not having title, including * * * contributions and services as a spouse, parent, wage earner and homemaker, and to the * * * career potential of the other party" (Domestic Relations Law § 236 [B] [5] [d] [6]). The court must consider, *inter alia,* the "non-liquid character" of the marital property, the probable future financial circumstances of the parties, and the difficulty of evaluating any interest in a profession (Domestic Relations Law § 236 [B] [5] [d] [7], [8], [9]). Finally, if equitable distribution is impractical or burdensome, the court may employ the concept of a "distributive award" (Domestic Relations Law § 236 [B] [1] [b]) to achieve equity between the parties (Domestic Relations Law § 236 [B] [5] [e]). A distributive award is a broadly defined vehicle available to facilitate or effectuate a division of property.

## IV

In recognizing that a license to practice medicine constitutes "marital property", Trial Term did no more than give effect to the legislative intent underlying the enactment of the Equitable Distribution Law (McKinney's Cons Laws of NY, Book 1, Statutes § 92) by following the natural and obvious meaning of the

language employed in the statute (McKinney's Cons Laws of NY, Book 1, Statutes § 94). The broad definition of marital property (*see generally, Majauskas v Majauskas,* 61 NY2d 481), the specific recognition of the role of a spouse as a wage earner and homemaker, the mandate to consider both the contribution to the career potential of the other spouse and the probable future financial circumstances of the parties, and the direction to consider the difficulty in evaluating any interest in a profession all inexorably lead to the conclusion that defendant's contributions to plaintiff's achievement of a medical license may not go unrecognized by resorting to irrelevant common-law concepts of property (Foster, A Practical Guide to the New York Equitable Distribution Divorce Law, at 48-49; 2 Foster and Freed, Law and the Family — New York § 33:4-A [1984 Cum Supp]; Florescue, *"Market Value", Professional Licenses and Marital Property: A Dilemma in Search of a Horn,* Dec. 1982 NY St BA Fam L Rev 13; *Conner v Conner,* 97 AD2d 88, 107-108 [concurring opn of Bracken and Brown, JJ.]). The simple reality of the situation is that while they were married, defendant contributed mightily to plaintiff's substantial professional achievement. Plaintiff may not simply leave the marriage with his enhanced "human capital" potential intact for his own personal use (Bruch, *The Definition and Division of Marital Property in California: Towards Parity and Simplicity,* 33 Hastings LJ 771, 818), while defendant's labors are ignored and her justified expectations of increased material acquisitions go unrewarded simply because she may not be entitled to "maintenance" (Domestic Relations Law § 236 [B] [6]) as an otherwise self-supporting individual. "Equitable means what is fair, just and right" (Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:10, 1977-1984 Supp Pamph, p 196) and a realistic reading of the phrase "marital property" so as to include the attainment of a medical license is consonant with the intent and language of the statute and in accord with the concept of equitable distribution.

The major arguments raised against treating a medical license as marital property are unconvincing. Cases relied upon by the majority such as *Lesman v Lesman* (88 AD2d 153, *appeal dismissed* 57 NY2d 956), place an undue emphasis on the fact that a medical license does not fit within conventional common-law concepts of property. As discussed heretofore, however, the concept of "marital property" is a purely statutory creation which must be used to accomplish what is fair and just in dividing the attainments of the marriage, material or otherwise,

between the parting spouses. In seeking to do equity it is unnecessary and unrealistic to rely solely upon prior conventional concepts of property.

A major reservation expressed about a present award based upon anticipated future earnings concerns the speculative and restrictive nature of such an award. A medical school graduate licensed to practice surgery may decide that he in fact does not want to practice medicine at all, but would rather undertake a less financially rewarding pursuit. He may decide he only wishes to teach medical studies, and he will thus not receive the financial rewards of a practicing surgeon. He should not be forced to practice medicine, it is argued, simply to meet the obligations imposed upon him by a large judgment.

I believe that this concern is a legitimate one, but one which serves as an inadequate basis for precluding an award such as the one in the instant case. This is so for several reasons. Although the measurement of damages may be an inexact science, the dilemma should be dealt with as a valuation problem, and should not serve as a basis for erasing a substantive right (*see,* 2 Foster and Freed, Law and the Family — New York § 33:8-F [1984 Cum Supp]). In wrongful death actions, awards are made which involve an assessment of prospective and indefinite damages that are necessarily speculative in nature (67 NY Jur, Wrongful Death, §§ 157, 163, 166). Good will is intangible in form, is based on expectations, and has no existence as property in and of itself, yet damages are available for injuries to good will (25 NY Jur, Good Will, §§ 1, 2). Techniques exist for putting a present value on future earning capacity (Weitzman, *The Economics of Divorce: Social and Economic Consequences of Property, Alimony and Child Support Awards,* 28 UCLA L Rev 1181, 1219), and the "increased human capital" which has been attained by one spouse during the marriage must be recognized if equity is to be done (Bruch, *The Definition and Division of Marital Property in California: Towards Parity and Simplicity,* 33 Hastings LJ 771, 818). This court has already held that an employment pension plan is subject to equitable distribution despite the fact that the amount of the pension may be speculative or may for other reasons not reach fruition (*Damiano v Damiano,* 94 AD2d 132). It has been held that an ongoing law practice is marital property subject to equitable distribution (*Litman v Litman,* 93 AD2d 695, *affd* 61 NY2d 918). In reality, an award based upon such a practice is premised on certain expectations and predictions concerning the continuing viability and success of the practice.

The key to the valuation problem is to carefully focus upon and scrutinize the facts of each individual case in an effort to achieve the ultimate goal of an equitable result. In a particular situation the trial court may find, as a question of fact, that a duly licensed surgeon will not utilize his license to practice medicine, or will pursue a less lucrative teaching position. In some situations a divorce action will be initiated days after a medical license is obtained, in some situations years will pass, and in some situations decades will pass before a marriage faces dissolution. There is no reason to impose an arbitrary cutoff date to determine whether spousal contributions to the achievement of the license will be rewarded. It does not make sense to make an award of "marital property" because a spouse has been practicing a profession two weeks before the divorce action was initiated, and not make an award of "marital property" because a licensed spouse will not launch the practice until two weeks after the divorce action is commenced. In some situations a court may determine that one spouse has made no contribution to the other spouse's attainment of a professional license obtained during the marriage. In short, the untold number of situations that may arise can only be dealt with on an individual case-by-case basis. The tremendous flexibility available under the Equitable Distribution Law provides a basis for achieving equity in each individual case.

I would simply hold that the procedure employed in making an award in this specific case was an appropriate one. During the course of the nine years of marriage preceding the commencement of this divorce action, the defendant wife made major financial contributions, as well as intangible contributions, towards plaintiff's attainment of a medical license. There is adequate expert testimony in the record to support the determination made as to the present value of the license in issue. In light of the duration of the marriage, defendant's substantial contribution to plaintiff's career potential, and based upon all of the other circumstances to be considered herein (Domestic Relations Law § 236 [B] [5]), I believe that the award of 40% of the present value of the subject license was appropriate. Although the trial court's statement of its consideration of all of the requisite factors was somewhat sparse (*Nielsen v Nielsen*, 91 AD2d 1016), the record allows for an independent determination that, in light of all the statutory factors to be considered, the award here was a proper one (*Duffy v Duffy*, 94 AD2d 711).

In this case, as an alternate theory of recovery, defendant sought an award, restitutory in nature, to receive compensation in the amount by which her monetary contributions to the

parties' support, along with the contributions from her family, exceeded the sums contributed by plaintiff and his family over the course of the marriage. Although the court chose to adopt the "marital property" theory of recovery, and I would affirm its discretionary selection of that remedy, I believe that in a fitting case a restitutory award could be considered to be a proper remedy (*see, Hubbard v Hubbard,* 603 P2d 747 [Okla]; *In re DeLa Rosa v DeLa Rosa,* 309 NW2d 755 [Minn]; *Mahoney v Mahoney,* 91 NJ 488, 453 A2d 527). A restitutory award is more amenable to concrete proof than the remedy that was actually adopted herein (Note, *Equitable Distribution of Degrees and Licenses: Two Theories Toward Compensating Spousal Contributions,* 49 Brooklyn L Rev 301). However, in this case, the marital property award is preferable to a restitutory award, in that it recognizes the loss of the reasonable expectations of defendant, does not relegate her to the role of an alternative to a student loan, and is consistent with the intent of the equitable distribution statute. I simply note my view that under appropriaté circumstances (such as, for example, where the court determines the professional license attained will not result in an actual professional practice) a restitutory award ought to be an available remedy.

I must also express the grave reservations I have about the remedy proposed by the majority. The core of its solution is to send defendant back to school for 15 months of postgraduate work. They ignore the fact that the record is devoid of any indication that defendant has expressed a desire to return to school. Is she being sent back to school even if it is contrary to her desires, and if she refused to return to school, is she left without a remedy? It appears that because the majority has refused to retreat from a position that requires an award to fit within common-law concepts of property, they have fashioned an award that may well prove to be illusory.

## V

The holding of this court in *Conner v Conner* (97 AD2d 88) is distinguishable from this case and does not support plaintiff's claim that his medical license is not to be treated as "marital property". In that case Special Term had denied a motion by defendant wife for expert fees for an evaluation of plaintiff husband's education, which had resulted in a Master's degree in business administration, for purposes of equitable distribution, but awarded defendant $500 in expert fees to evaluate all other marital property and to place a value on defendant's homemaker services, if any. Defendant appealed from so much of the order as

denied her motion for expert fees for an evaluation of plaintiff's education. This court modified the order of Special Term by increasing the $500 award for expert fees to $750, and by adding a provision thereto that the expert fees awarded might be used to evaluate the parties' present and future financial circumstances, including their education and work experience. Although all five members of the court agreed that there should be an increase in the amount of the fee and that the fee was to be used, *inter alia,* to evaluate the parties' education and work experience, the court divided on whether plaintiff's degree was to be deemed "marital property". In separate opinions, three of the members of the court concluded that it was not to be so classified, and two of the members of the court joined in an opinion to the contrary.

Unlike *Conner* (*supra*), in this case we are dealing with more than a college degree. Here, plaintiff had been licensed to practice medicine prior to the commencement of this action. The licensing authority had thus conferred upon him the regulated privilege of practicing medicine (*see,* Education Law §§ 6500, 6503; *People ex rel. Bennett v Laman,* 277 NY 368; 35 NY Jur, Licenses and Permits, §§ 1, 3). The privilege of applying his previous education and training vested, allowing plaintiff to finally convert his training into a professional practice, and also affording him certain due process rights (*see e.g., Matter of Sinha v Ambach,* 91 AD2d 703). In short, our case presents a scenario where the educational background has been converted into a concrete privilege to practice the profession of medicine. That privilege, being in the nature of a franchise, was properly considered by the trial court as marital property for the purpose of equitable distribution.

## VI

The other issues raised by this appeal may be quickly dealt with. An award of counsel and expert witness fees to defendant was appropriate under the circumstances of this case. The award of maintenance arrears was proper. Under the circumstances the court correctly refused to consider marital fault as a factor in its decision (*Blickstein v Blickstein,* 99 AD2d 287).

Accordingly, the judgment appealed from should be modified by deleting that part of the fourth and fifth decretal paragraphs which refer to a medical school degree, and as so modified, the judgment should be affirmed insofar as appealed from by the plaintiff, without costs or disbursements. For the reasons stated by the majority, I concur that the defendant's cross appeal

should be dismissed as abandoned, without costs or disbursements.

NIEHOFF and LAWRENCE, JJ., concur with O'CONNOR, J.; THOMPSON, J. P., concurs in part and dissents in part, in an opinion with which WEINSTEIN, J., concurs.

Judgment of the Supreme Court, Westchester County, dated July 6, 1982, modified, on the law, by deleting the fourth, fifth, sixth and seventh decretal paragraphs thereof. As so modified, judgment affirmed insofar as appealed from by the plaintiff, without costs or disbursements, and matter remitted to the Supreme Court, Westchester County, for further proceedings in accordance with the opinion of O'Connor, J., herein.

Cross appeal by defendant from stated portions of said judgment dismissed as abandoned, without costs or disbursements.