OPINION OF THE COURT
Vincent R. Balletta, Jr., J.
Motion by the defendant for leave to amend his answers to *880 interrogatories, and cross motion by the plaintiff for leave to amend her answers to interrogatories, inter alia, are determined as follows:
In this matrimonial action, the defendant seeks leave to amend his answers to interrogatories pursuant to CPLR 3134 (c) so as to include a reference to a claimed equitable distribution in the plaintiff’s law degree. It is conceded that the plaintiff graduated from law school in 1976 and that she was admitted to the Bar in 1977. The parties were married in 1963. The defendant relies upon the recent Court of Appeals decision in O’Brien v O’Brien (66 NY2d 576 [1985]), in support of his motion.
In O’Brien, the Court of Appeals expressly held that a professional license (in that case, a medical license) acquired during marriage was a marital asset to which the other spouse may claim a distributive portion. The court, relying in part upon the language of Domestic Relations Law § 236 (B) (5) (d) (6), (9), stated "that an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family” (66 NY2d, at p 584).
The plaintiff herein argues that O’Brien is inapplicable to the case at bar since, in this case, she has never pursued a "private” law practice. "Instead, she has always opted to pursue a career of government, municipal or other agency service, at a fixed salary * * * Therefore, she has no private practice to evaluate or, alternatively, the value of her private practice is zero”. The plaintiff contends that "her license, as such, has no value under these circumstances”.
The court is not swayed by this argument. In O’Brien, the plaintiff was still in residency for general surgery, and, in fact, he had testified at trial that he was dissatisfied with general surgery and was attempting to return to internal medicine. Yet, the court upheld the use of a valuation of the license based upon his potential earnings as a general surgeon. The court noted that the value of a professional license "is the enhanced earning capacity it affords the holder and although fixing the present value of that enhanced earning capacity may present problems, the problems are not insurmountable.” (66 NY2d, at p 588.) In short, the plaintiff’s legal license may *881 have a value for enhanced earning capacity that may not necessarily be reflected in her present employment.
Further support for this proposition may be found in the court’s language at page 586 of its decision: "The majority at the Appellate Division held that the cited statutory provisions do not refer to the license held by a professional who has yet to establish a practice but only to a going professional practice (see, e.g., Arvantides v Arvantides, 64 NY2d 1033; Litman v Litman, 61 NY2d 918). There is no reason in law or logic to restrict the plain language of the statute to existing practices, however, for it is of little consequence in making an award of marital property, except for the purpose of evaluation, whether the professional spouse has already established a practice or whether he or she has yet to do so. An established practice merely represents the exercise of the privileges conferred upon the professional spouse by the license and the income flowing from that practice represents the receipt of the enhanced earning capacity that licensure allows. That being so, it would be unfair not to consider the license a marital asset.”
In any event, the plaintiff’s argument essentially addresses the issue of whether or not her license has a value which may be distributed. The question of the valuation of the license is different from the issue of whether it is marital property subject to equitable distribution.
The plaintiff also advances the argument that "this case is distinguishable from O’Brien since the O’Brien court was concerned about the equities of a relationship that was geared and directed toward the attainment of the husband’s license, only to have it snatched away from the wife on the eve of the fulfillment of her expectation. Here, the 'expectation’ of an enriched life was fulfilled by the engagement of the licensed spouse in an income-producing endeavor for 9 years subsequent to the attainment of the license.”
While it may be true that the O’Brien court may have been swayed by the equities of that particular situation, there is nothing in the language of the court’s decision that limits it to that fact pattern. Indeed, the broad and sweeping language of the court indicates that the decision was to be applied to all cases involving a professional license.
Accordingly, the defendant’s motion to amend his answers to interrogatories to include a claim of equitable distribution of the plaintiff’s legal license is granted.
*882 The plaintiffs cross motion seeks, in part, leave to amend her interrogatories to include a claim for an equitable share in the defendant’s marketing degree. The defendant acquired a B.S. in marketing from Adelphi University in 1967. There is no allegation that he holds any professional licenses.
The court in O’Brien was concerned solely with whether a medical license constituted marital property:
"In this divorce action, the parties’ only asset of any consequence is the husband’s newly acquired license to practice medicine. The principal issue presented is whether that license, acquired during their marriage, is marital property subject to equitable distribution under Domestic Relations Law § 236 (B) (5) * * *
"We now hold that plaintiffs medical license constitutes 'marital property’ within the meaning of Domestic Relations Law § 236 (B) (1) (c) and that it is therefore subject to equitable distribution pursuant to subdivision 5 of that part.” (66 NY2d, at pp 580-581.)
The holding in O’Brien was thus limited to professional licenses. The Court of Appeals did not overrule prior court rulings that educational degrees are not subject to equitable distribution.
In Conner v Conner (97 AD2d 88, 89 [2d Dept 1983]), the court concluded "that an academic degree is not property susceptible of distribution pursuant to part B of section 236 of the Domestic Relations Law.” In Conner; the husband held a Master’s of business administration degree. The court noted that "we may not indulge in the fiction that an academic degree can be evaluated as reified marital property” (97 AD2d, at p 102). The court in Conner had relied in part upon the Fourth Department’s decision in Lesman v Lesman (88 AD2d 153 [1982], appeal dismissed 57 NY2d 956), which had also held that an advanced degree was not property.
A reading of the O’Brien decision indicates that the Court of Appeals concurred with the approach taken by Justice Thompson in his dissenting opinion at the Appellate Division below (106 AD2d 223, 233-240). It is interesting to note that while Justice Thompson was willing to declare O’Brien’s medical license as marital property, he wrote at length to distinguish the Conner case: "Unlike Conner (supra), in this case we are dealing with more than a college degree. Here, plaintiff had been licensed to practice medicine prior to the commencement of this action. The licensing authority had *883 thus conferred upon him the regulated privilege of practicing medicine (see, Education Law §§ 6500, 6503; People ex rel. Bennett v Laman, 277 NY 368; 35 NY Jur, Licenses and Permits, §§ 1, 3). The privilege of applying his previous education and training vested, allowing plaintiff to finally convert his training into a professional practice, and also affording him certain due process rights (see e.g., Matter of Sinha v Ambach, 91 AD2d 703). In short, our case presents a scenario where the educational background has been converted into a concrete privilege to practice the profession of medicine. That privilege, being in the nature of a franchise, was properly considered by the trial court as marital property for the purpose of equitable distribution.” (106 AD2d, at p 240.)
Accordingly, this court is unwilling to extend the O’Brien holding to an academic degree, and, therefore, that branch of plaintiff’s cross motion which seeks to amend her answers to interrogatories is denied.
That aspect of the plaintiff’s cross motion which seeks a further examination before trial of the defendant, and the production at said examination of certain charge account records revealed at his prior examination before trial is granted. It should be pointed out that ”[i]n a matrimonial action involving issues of equitable distribution of marital property, public policy clearly mandates full financial disclosure” (Charpentier v Charpentier, 114 AD2d 923 [2d Dept 1985]). A party is entitled to full disclosure bearing upon the issues of equitable distribution and the other party’s ability to pay for maintenance and child support.
Accordingly, the defendant is directed to appear for a further examination before trial at Special Term, Part II, of this court (room 05, lower level), at 9:30 a.m. on May 6, 1986. There shall be no adjournment without approval of the court.
Finally, that branch of the plaintiff’s cross motion which seeks to compel the defendant to disclose whether he has expended sums for the hiring of experts and the factual information upon which his experts will express opinions, is denied. (Lobatto v Lobatto, 109 AD2d 697 [1st Dept 1985].)