**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding ,upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3339-19

MICHELLE RUTKOWSKI,

     Plaintiff-Respondent,

v.

MARIO REYES,

     Defendant-Appellant.

_____

Argued May 25, 2022 – Decided July 14, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-1668-03.

Richard Kotkin argued the cause for appellant.

Respondent has not filed a brief.

PER CURIAM

     Defendant appeals from a January 30, 2020 Family Part order denying his motion to reduce his unpaid child support balance by making a modification of

his child support obligation retroactive to January 16, 2016—the date on which he purportedly filed a pro se motion while incarcerated in federal prison.[1]  The trial court denied defendant's latest motion, characterizing the plain language of his January 16, 2016 filing as a motion to "discharge" his support arrears, not to modify or suspend child support during a period of imprisonment as authorized by Halliwell v. Halliwell, 326 N.J. Super. 442, 457–58 (App. Div. 1999).  It is not disputed that had defendant phrased his January 16, 2016 request as a motion to modify or suspend, rather than to discharge, he would be entitled to the relief he now seeks.  After carefully reviewing the record, we conclude that in these circumstances, defendant's unartful request to discharge his child support debt should be construed to impliedly include a request to suspend or modify.  We therefore reverse and remand for the trial court to apply the September 24, 2018 modification of defendant's child support obligation retroactive to January 16, 2016 and to recalculate his arrears accordingly.

## I.

We need only briefly summarize the relevant facts and procedural history, which we discern from the record.  On January 16, 2016, defendant filed a pro

---

[1]  We note that defendant has since been released from federal custody and is represented in this appeal by counsel.

A-3339-19

se motion concerning his child support arrears. Defendant was incarcerated in federal prison at Fort Dix, so the motion was mailed by prison authorities on his behalf. However, defendant received no response nor any indication the motion was filed or received at all.

On July 17, 2018, defendant was released from incarceration to the custody of a halfway house. That same day, defendant filed a motion to "vacate and/or modify" the existing child support order, seeking retroactive effect dating to his initial filing. A hearing was convened on September 24, 2018, after which the Family Part judge (initial judge or court) reduced defendant's weekly child support obligation to $63, plus $10 toward his arrears balance of $29,678.39, for a total of $73 due weekly, effective July 17, 2018. Defendant requested the initial judge to vacate the arrears that had accumulated since the January 2016 filing. The initial judge denied that request, but did so without prejudice, providing that "if the [defendant] can find his proof for the [c]ourt that he previously tried to file an application for modification" on January 16, 2016, during the period of defendant's incarceration, "he may refile an application and the [c]ourt may preserve the filing date and amend the [retroactive] date of this [modification] order."

On April 29, 2019, defendant, now represented by counsel, contacted the Federal Bureau of Prisons pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking proof that defendant had filed a motion on or about January 16, 2016. On May 23, 2019, defendant received by mail a response signed by the Regional Counsel for the Federal Bureau of Prisons. The response included a single-page photocopy entitled "UNIT OUTGOING—CERTIFIED/SPECIAL/LEGAL MAIL" showing that, via prison staff, defendant had mailed something to the Office of Child Support on January 16, 2016.

On November 4, 2019, defendant filed a new motion requesting the court to "vacate and/or modify" the September 24, 2018 order retroactive to January 16, 2016, and to adjust his arrears accordingly. Attached to the motion was a certification, signed by defendant, which read, "I respectfully request that the [c]ourt enter an order vacating my entire arrearage of child support of $29,673.39." Defense counsel included an additional certification that stated defendant was seeking the court to vacate the entire arrears amount.

On January 15, 2020, a different Family Part judge (trial judge) convened a hearing to determine whether the photocopied prison mail log satisfied the initial court's requirement to make the effective date of the September 24, 2018

A-3339-19

order retroactive to January 16, 2016.  As proof that he had mailed a motion on or about January 16, 2016, defendant produced the one-page excerpt from prison legal/certified mail log, indicating that defendant had given a prison staff member a legal document to be mailed to the Child Support Office on January 16, 2016.  The photocopied page also included defendant's prison ID number, and the signatures of defendant and the prison officer.  Although the mail log excerpt showed that something had been mailed on the relevant date, it did not indicate what the envelope actually contained.

As proof of the actual filing, defendant provided to the trial court what he claimed was a copy of the document that had been mailed on his behalf by prison authorities.  That document states in pertinent part:  "Petitioner Mario Willie Reyes, respectfully submit[s] this motion for request for discharging payment of his child support, due to him being in federal custody here at Fort Dix . . . ."

After hearing arguments, the trial court determined that defendant had presented

> an undated application . . . requesting a discharge of child support.  [The log showed] a mailing [had been sent] in 2016 to child support, [but] no specifics as to what the mailing was.  We don't have a copy of the actual mailing.  We don't have a filed copy of anything.  Again, we don't have any dates as far as this is concerned.

5

The trial judge acknowledged that defendant had produced a copy of "the [motion] that allegedly he sent from [federal prison]." However, even accepting that copy as proof of the filing mailed on January 16, 2016, the trial court noted, "as far as this [c]ourt is concerned[,] . . . [what defendant produced] was a motion for discharge or elimination, termination of the child support obligation . . . ."

In rejecting defense counsel's argument that the pro se letter should be interpreted as a request to modify defendant's support obligation during the period of his incarceration, the trial judge noted, "[b]ut that's not what it says. It doesn't say 'modify,' counsel. What's in front of me if I'm to accept this and I'm accepting it is for discharging payment[2] of his child support due to him being in federal custody." The trial judge concluded that the language of the letter was clear: "[d]ischarge means discharge." "[R]eading th[e] application for what it is, and . . . the [j]udge's court order back on September 24[], 2018 for what it is," the judge found that the January 2016 motion was could not be reasonably interpreted as "a modification application when clearly it states[—]whether he did this alone or with somebody else[—i]t's for discharge of the payment. He wants the payments to stop. He's in prison. He wants it to stop."

---

[2] See infra note 3.

However, in an abundance of caution, the trial court decided to relist the "matter . . . for [January 30, 2020] in order for the [c]ourt to confer with the [initial] . . . judge [who] . . . presided over this application back on September the twenty-fourth of 2018[,]" to ascertain, specifically, what "proof" the initial judge required to modify the effective date.

On January 30, 2020, the trial judge confirmed that she had spoken with the initial judge and that her earlier interpretation of his order was correct. Based on the plain language of the letter defendant had produced, the trial judge "[concluded] that the [January 2016] discharge application was just that, a discharge application and not a modification . . . ." Accordingly, the trial court denied defendant's request to apply the September 24, 2018 reduction in child support retroactive to January 16, 2016.

This appeal followed. Defendant raises the following contentions for our consideration:

> POINT I
>
> THE TRIAL COURT FAILED AND REFUSED TO FOLLOW THE LAW OF THE CASE AS THE APPELLANT PROVIDED OVERWHELMING PROOF THAT HE PREVIOUSLY TRIED TO FILE AN APPLICATION FOR MODIFICATION AND HIS APPLICATION FOR VACATION AND/OR MODIFICATION FOR CHILD SUPPORT

[ARREARAGES] MUST RELATE BACK TO JANUARY 16, 2016.

## II.

We believe the critical issue before us is not what the initial judge intended for defendant to prove but rather whether the January 16, 2016 letter[3] functionally serves as a request to modify or suspend defendant's child support obligations during his imprisonment, and not just a request to eliminate all arrears that had theretofore accrued. Before we begin our analysis, we acknowledge certain basic legal principles that inform our decision.

As a general proposition, the scope of appellate review of a Family Part judge's decision of whether to grant or deny an application to modify child support is narrow. Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016); Cesare v. Cesare, 154 N.J. 394, 411 (1998). We review such decisions for abuse of discretion. We accord deference to Family Part judges due to their "special jurisdiction and expertise" in family law matters. Cesare, 154 N.J. at 413. We are bound by the judge's findings after a trial so long as they are "supported by adequate, substantial, credible evidence." Id. at 411–12. We therefore will not

---

[3] Like the trial court, we will assume that the letter produced by defendant for the January 15, 2020 hearing is a copy of the actual filing that was mailed on defendant's behalf by federal prison authorities on or about January 16, 2016.

disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent with" the evidence presented. Id. at 412. However, challenges to legal conclusions, as well as a trial judge's interpretation of the law, are subject to our de novo review. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382–83 (2010). We add that, in this case, the trial court's decision was not based on a credibility assessment but rather the interpretation of the literal text of a pro se letter-pleading.

Debts accrued through unpaid child support arrears may not be discharged. Lynn v. Lynn, 91 N.J. 510, 516 n.1 (1982); see also Dunbar v. Dunbar, 190 U.S. 340 (1903) (holding that a debt for the support of children is not dischargeable). It is not disputed, however, that the rule recognized in Halliwell would have permitted defendant's support obligation to be suspended upon his request, and the amount of arrears to be recalculated after his release. 326 N.J. Super.at 457–58 ("[I]n cases where the obligor has been sentenced to a lengthy period of incarceration and has no assets, [courts may] defer any action on the obligor's motion" to suspend the weekly support obligation, then determine obligor's support obligation and arrears upon defendant's release, retroactive to the date of the obligor's initial motion.)

A-3339-19

We add that defendant's "status as a pro se litigant in no way relieve[d] [him] of [his] obligation to comply with . . . court rules . . . ." Venner v. Allstate, 306 N.J. Super. 106, 110 (App. Div. 1997). A litigant who chooses to represent himself is "presumed to know, and [is] required to follow, the statutory law of this state." Tuckey v. Harleysville Ins. Co., 236 N.J. Super. 221, 224 (App. Div. 1989). The fact of self-representation, in other words, does not relieve defendant from the normal operation of the law.

However, we do not believe that we are foreclosed entirely from accounting for an inmate's pro se status in interpreting his pleadings. While we appreciate the trial court's focus on the "plain language" of defendant's request, we also recognize that an inmate's pro se letter may not be written with the precision we would expect of a counselled pleading. We add that while pro se litigants are not excused from adherence to substantive legal or procedural rules, strict compliance "may not be pursued at the expense of the failure by the court system to perform its function of dispensing substantial justice on the merits." Rubin v. Rubin, 188 N.J. Super. 155, 150 (App. Div. 2014); cf. R. 1:1-2 (instructing that the rules of procedure are to be construed to secure a just determination, simplicity in procedure, and fairness in administration). It remains "fundamental that the court system is obliged to protect the procedural

10 <span>A-3339-19</span>

rights of all litigants and to accord procedural due process to all litigants." Rubin, 188 N.J. Super. at 159. Indeed, it is not uncommon in Family Part that pro se litigants do not know exactly what to ask for, and thus sometimes phrase their prayers for relief unartfully. Sometimes, that will prompt the judge to clarify their applications and, as appropriate, allow them to amend those requests to comply with governing legal principles. See Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014).

We note in this regard that, in this instance, no timely action was taken on whatever was mailed from federal prison on or about January 16, 2016. It is not clear from the record whether the mailing from the prison was lost. But had that motion been heard and denied on the grounds that it sought impermissible relief, that is, the total elimination of existing child support arrearages, see Lynn, 91 N.J. at 516 n.1, it is conceivable that defendant, while still incarcerated, would have had an opportunity to file an amended or replacement motion seeking the relief expressly authorized by Halliwell.

In these circumstances, we interpret the January 16, 2016 letter to include an implied request to suspend accumulation of child support debt during a period of incarceration. The fact that defendant asked unartfully for more than the law permits—total elimination of his child support debt—does not mean that he did

11

not also ask for that to which he was entitled by law, that is, the relief authorized by <u>Halliwell</u>.

Accordingly, we reverse and remand for the trial court to make the September 24, 2018 order modifying child support obligations retroactive to January 16, 2016, and to recalculate the arrears that defendant owes. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3339-19